[Sac. No. 2283. Department Two.—November 23, 1916.]

## BUTTE CREEK CONSOLIDATED DREDGING COMPANY (a Corporation), Respondent, v. LAURA F. OLNEY et al., Appellants.

CONTRACTS—SALE OF LAND—PLEADING—AMENDED COMPLAINTS—IDENTITY OF CAUSES OF ACTION.—In an action on contracts for the sale of land there is no change in the amended complaint from the cause of action originally pleaded from one for specific performance to a suit for damages, where the first complaint pleads the execution of the contracts and various payments thereunder, alleges that the agreements were just and fair, sets up full compliance with their terms, avers that defendants never insisted upon strict performance in the matter of dates of payments, and prays specific performance as well as damages for the refusal on the part of the defendants to convey the described property; and the amended complaint alleges that defendants represented themselves as owners of the land described in the contracts, but that as a matter of fact they did not own a certain tract of twenty acres contained in that area, and there are averments of the various payments made to defendants, of their ownership of the land except the twenty acres, of the justness of the agreements, of the refusal of the defendants to give a deed, and further setting forth plaintiff's belief, until shortly before the filing of the amended complaint that defendants owned the twenty acres in question, but that when its dredging operations had reached a certain line, the work was stopped by the real owner of the land greatly to the loss of plaintiff, and damages being demanded for the loss thus occasioned, and that a conveyance be made of the property less the twenty acres and damages awarded by reason of the failure of title to the twenty-acre parcel.

ID.—SUPPLEMENTAL COMPLAINT—LACK OF ERROR IN ALLOWING FILING OF.—In such a case there is no error in allowing the filing of a supplemental complaint containing allegations to the effect that after the commencement of the action the real owner of part of the land had halted plaintiff's dredging operations, thus preventing access to other lands of plaintiff to its damage in a certain amount, it being contended that no matter was pleaded therein which was not known to the pleader when the original complaint was filed, where the court awarded no damages on account of the facts set up in the supplemental complaint.

ID.—MISTAKE IN ACREAGE—REMISSION OF PART OF DAMAGES.—Where the trial court made a mistake in determining the acreage and on a motion for new trial plaintiff offered to refund a certain amount as a credit on the judgment in case the motion should be denied,

but the court denied the motion without making the remission, the judgment will be modified on appeal in accordance with the stipulation of the plaintiff remitting the amount with interest thereon.

Id.—Value of Land Per Acre—Method of Determining.—In such a case the court properly determined the value per acre of the land, title to which failed on the basis of the total amount actually paid in instead of the amount described in the contract as the purchase price, the difference in the two amounts, that is, the initial payment, defendants claiming to be a bonus for the right to purchase, as calling this amount a bonus did not mitigate plaintiff's loss.

Id.—Description of Land—Title Conveyed.—Where a contract of sale of land, after specifying the sections and quarter-sections to be sold, recites that the description is intended to apply to all of the lands owned by the vendors lying west of the east bank of Butte Creek "as described above, except the northwest quarter of the southwest quarter where the middle of Butte Creek shall be the dividing line," the contract was not merely for the sale of land in gross; and there is no force in the contention that by this language the vendors merely promised to convey title to whatever land they might own in that vicinity. The purpose of the limitation was to prevent the vendees or their assigns after payment of the purchase price from asserting title to any of the land covered by the description according to the subdivisions, yet lying east of the line fixed; in other words, it was a limitation of a general description by specific boundary lines.

Id.—Mistake as to Title.—Where in a contract for the sale and purchase of land, after certain payments have been made on the contract, the vendors refused to convey the land upon tender of the balance of the purchase money, upon the ground that there had been a default in payment, and the vendee then entered into a lease with the vendors, in which lease certain land to which the vendors had no title was specifically described as belonging to the vendors, and which was also described in the previous contracts of sale, and in her deposition taken after the commencement of the action one of the vendors sets forth her belief that at the time the contract of sale was made she owned this land, it cannot be successfully contended that there was no evidence of mistake of the latter with reference to her title to this particular land.

Id.—Specific Performance—Compensation for Land as to Which Title Fails.—Where a court of equity finds itself unable to enforce conveyance of all the land described in a contract of sale, it will compel compliance with the agreement as far as possible at the rate agreed upon between the contracting parties; and a necessary corollary to this rule is that the same measure must be applied in estimating the proportion of the purchase price recoverable by one who has mistakenly paid for more land that the vendor is able to convey;

in other words, the compensation allowed for the deficiency in quantity should be at the rate of the average price paid for the entire tract.

ID.—DEFAULT IN PAYMENT — WAIVER OF FORFEITURE — COMPROMISE AGREEMENT—MISTAKE IN EXECUTING—POWER OF COURT TO SET ASIDE.—Where the vendors under a contract of sale of land refuse to convey after tender of the balance of the purchase price by the vendee, but by their course of dealing waived the provision of the contract making time of the essence, and the vendee was induced to enter into a lease of the land with the vendors under the mistaken belief that its rights to purchase the land had been forfeited, a court of equity has power to set aside the contract of lease.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Tucker, Kenyon & Macfarland, J. Z. Tucker, and White, Miller, Needham & Harber, for Appellants.

Kemp, Mitchell & Silberberg, for Respondent.

MELVIN, J.—Defendants appeal from an adverse judgment and from an order denying their motion for a new trial.

The litigation concerns certain contracts for the sale and purchase of real property. On April 8, 1907, an agreement in writing was made by defendants and plaintiff's predecessors in interest by the terms of which the Olneys, parties of the first part, in consideration of the sum of five thousand dollars, receipt of which was thereby acknowledged, and in further consideration of the covenants and promised future payments provided by the contract, gave and granted to the "parties of the second part" the option and right to purchase the property therein described. The description was of certain land situated in section 19, township 22 north, range 3 east, Mount Diablo base and meridian, in Butte County. The part of the description to be particularly considered in this opinion related to "all of the southwest quarter of the northeast quarter lying west of the east bank of Butte Creek."

It was further provided that the purchase price of said property should be the sum of twenty-eight thousand dollars, to be paid as follows: Five thousand dollars on or before October 8, 1907; ten thousand dollars on or before April 8, 1908, and thirteen thousand dollars on or before October 8, 1908. Deferred payments were to bear interest at the rate of six per cent per annum commencing six months from the date of the instrument. The first parties agreed that upon the demand of the second parties or assigns they would place in escrow a good and sufficient deed, to be delivered upon deposit of the final payment. The contract also contained the following language: "That in the event of a failure on the part of the second parties, or their assigns, to make any payment at the times herein provided, or to otherwise fail to comply with any and all the terms and conditions herein stated all rights hereunder shall thereupon cease and this option become null and void, it being especially understood and agreed that upon any such failure all and any moneys paid and all improvements made upon said property hereunder by the second parties shall be forfeited to and become and remain the property of the first parties, as their compensation and in full satisfaction to them for having granted this option." It was further provided that the Olneys might occupy the premises for farming, but that after the first payment the second parties might enter upon the land, construct mining machinery, and mine for gold. The sum of five thousand dollars due under the contract on October 8, 1907, was paid two days before that date. The sum of ten thousand dollars was due on or before April 8, 1908, and before that day the sums of ten thousand dollars principal and $690 interest were paid and a supplemental agreement was signed by all the parties, including the plaintiff. In this instrument the former writing is referred to and designated as "a certain contract for the purchase of lands in Butte County," thus showing, as respondent insists, that the parties treated the original and the supplemental agreements as contracts for the purchase and sale of real property and not as mere options. By the later instrument the time of payment of the ten thousand dollars due on or before April 8, 1908, was extended to August 8, 1908, and the time of payment of the sum of thirteen thousand dollars, due by the terms of the original con-

tract October 8, 1908, was extended to February 8, 1909, credit being given on this part of the indebtedness, however, for the one thousand dollars paid on the date of the execution of the supplemental contract—another evidence that the vendors and vendee were regarding the transaction as one of purchase and sale. The installment of ten thousand dollars supposedly with interest then due was paid prior to the date set by the second contract, and on October 20th an additional payment of $27.32 was made to cover an error in the computation of interest. The sum of twelve thousand dollars was not paid when due, but on August 3, 1909, payment was made of five thousand dollars of the principal and $360 interest. Mrs. Olney by letter acknowledged receipt of the check covering these amounts, and while protesting that it was inconvenient for her to grant further extension, she consented to a payment of three thousand dollars October 8, 1909, with interest to that date on seven thousand dollars, and of the remaining four thousand dollars, with interest on or before February 8, 1910. In this letter, however, Mrs. Olney wrote: "I have no desire to distress you in your efforts, and I imagine it is difficult to start so big a thing as you have undertaken there, so once more I consent to the extension of time you have asked for." A few days before October 8, 1909, the sums of three thousand dollars and seventy dollars interest were paid. The final payment was not made on time, but on or about February 8, 1910, the date on which it became due, the secretary of the Butte Creek Consolidated Dredging Company wrote to Mrs. Olney, at Washington, D. C., informing her that an assessment had been levied upon the stock of the corporation to meet the indebtedness, and asking her to send to the Bank of Chico a deed to the property executed by her and her husband to the dredging company as grantee, together with an abstract of title. After receiving this letter Mrs. Olney wrote to the secretary of the corporation, under date of February 14, 1910, declaring that by its failure to make the final payment on or before February 8th, the plaintiff had forfeited all right to the property.

Mr. March, secretary of the plaintiff, was sent immediately to Washington with a draft for $4,095, principal and interest due as the final payment for the property. He made tender of the money to the Olneys and demanded a deed, but they

refused to admit that the corporation had any rights in the property. After negotiations covering several days, Mr. March, the secretary of the Butte County Dredging Company, believing that the vendors might lawfully declare a forfeiture of the contract, agreed to accept a lease of the land for the term of seven years, giving the corporation the right, during that period, to dredge the land. He delivered to Mrs. Olney the draft for $4,095, and promised to have his company send to her five hundred dollars and five thousand shares of its capital stock. The board of directors of the dredging company complied with the promise thus made in their behalf and the lease was executed. It was dated March 5, 1910, and it contained as part of the description a specification of the land, approximately twenty acres, to which, as the parties to the lease subsequently learned, neither of the Olneys had any title. About July 27, 1910, after the payment of the five hundred dollars, the transfer of the stock and the execution of the lease, the corporation served notice of rescission of the lease upon Mr. and Mrs. Olney. In this notice the corporation recited that in accepting the lease in lieu of a deed the action of the board of directors of the plaintiff was taken through a misapprehension of the facts and of the legal rights of the corporation. Rescission is sought also on the ground (to quote from the notice) "that the said Laura F. Olney has received and accepted of this corporation the full purchase price therefor, together with interest on all deferred payments, and that this corporation is entitled to a deed to said property, and on the further ground that at the time the said payment was tendered to you and you refused to accept the same, that such refusal was unauthorized and you had no legal right to refuse to convey the said property to this corporation, and on the further ground that at the time the last payment was due from this corporation to you on account of the said lands, you concealed the fact from this corporation, and from its agents, that your title to a portion of the said land was not perfected, and you could not at the said time deliver a deed conveying the title to the said lands free of encumbrance." The writing contained a demand for a deed; for a return of the stock and money paid on account of the lease; and for five thousand dollars damages sustained by reason of refusal to convey title and

on account of fraudulent acts and concealments. These demands were not complied with, and this litigation was the result.

The original complaint is not set forth in its entirety in the transcript, although two quotations from it were read into the record by appellants. The amended complaint which does appear in full in the transcript pleads the execution of the two contracts and the various payments thereunder; alleges that the agreements were just and fair; sets up full compliance with their terms; avers that defendants never insisted upon strict performance in the matter of dates of payment; and prays specific performance as well as damages for the refusal on the part of defendants to convey the described property. In the second amended complaint plaintiff alleges that defendants represented themselves as owners of the land described in the two contracts, but that as matter of fact they did not own a certain tract of twenty acres contained in that area, namely, the south one-half of the northwest quarter of the northeast quarter of section 19. There are also averments of the various payments made to defendants of the ownership by Mrs. Olney on behalf of the marriage community of all the land except the twenty acres; of the justness of the agreements; and of the refusal of defendants to give a deed. The pleading further sets forth plaintiff's belief, until shortly before the filing of the second amended complaint, that the Olneys owned the twenty acres in question, and recites that when its dredging operations had reached the south line of this tract, the work was halted by one Martin, the real owner, greatly to the loss of plaintiff. Damages in the sum of five thousand dollars are demanded for the loss thus occasioned, and the prayer is for conveyance of the property less the twenty acres belonging to Martin; and for five thousand dollars damages sustained because of the refusal to convey and because of the failure of title in defendants to the twenty-acre parcel. There was a supplemental complaint containing allegations to the effect that after the commencement of the action Martin had halted plaintiff's dredging operations, thus preventing access to other lands of plaintiff to its damage in the sum of five thousand dollars. This pleading also contains the statement that immediately prior to the commencement of the action,

plaintiff discovered Mrs. Olney's lack of record title to the twenty-acre tract, but was assured by her and believed that nevertheless she could deliver title thereto. Appellants earnestly contend that the court erred in permitting the filing of the second amended complaint and the supplemental complaint because each, they insist, changed the original cause of action from one for specific performance to a suit for damages. Of the supplemental complaint it is said that it set up no matter which was not known to the pleader when the original complaint was filed, and *Young* v. *Matthew Turner Co.*, 168 Cal. 671–675, [143 Pac. 1029], is cited to the effect that the function of a supplemental complaint is to set up facts material to the case occurring after the finding of the former complaint. We may at once dismiss the consideration of the point of appellants with reference to the supplemental complaint, because conceding the correctness of their claim that the facts therein alleged were known when the original complaint was filed, the court awarded no damages on account of the failure of plaintiff to reach with its dredger other lands owned by the corporation because of the adverse ownership by Martin of the tract of twenty acres.

Appellants are mistaken in their belief that the original cause of action was abandoned and another pleaded in the second amended complaint. Plaintiff in all of its pleadings declared upon the two contracts, praying both specific performance and damages for breach. In her original answer Mrs. Olney averred title in her to all the property as alleged in the amended complaint. When subsequently failure of her title to the smaller portion was discovered, a pleading of that fact and the consequent demand for damages did not alter the cause of action. In essence it was still a suit founded upon the written contracts of sale and the failure on the part of the Olneys to perform their part of said agreements.

The court found that strict performance of the original and supplemental contracts had been waived; that plaintiff had performed its part of the agreements; that the title of defendants failed as to twenty acres of the land involved; that by reason of such failure plaintiff had been damaged to the amount of $3,420; that plaintiff was entitled to judgment for five hundred dollars, paid on account of the lease

made after the refusal of defendants to convey any of the land to plaintiff in fee; that the lease was made under misapprehension of law and facts; and that defendants were not damaged by plaintiff's action in canceling and refusing to deliver the five thousand shares of stock issued to Laura F. Olney in compliance with the terms of the lease. The judgment followed the findings except, as we have stated above, there were no damages awarded for the exclusion of plaintiff from certain of its properties by reason of Martin's refusal to permit passage across his twenty acres.

Appellants call attention to a mistake of the court in determining the acreage. The parcel of twenty acres, title to which failed, lies partly east of the east bank of Butte Creek, and therefore is not all within the description contained in the contracts. The evidence shows that the portion east of the creek is of an extent between one and two acres. On motion for new trial counsel for plaintiff offered to refund $855 as a credit on the judgment in case the motion should be denied. This was the price of five acres according to the finding of the court that the amount paid by plaintiff was $171 per acre. The motion for a new trial was denied but the order failed to notice the remission. Respondent stipulates that the sum of $1,078.45 be remitted from the judgment, being $855 on account of principal, together with interest thereon up to the date of judgment. We will permit and direct a modification of the judgment in accordance with this stipulation.

Appellants insist that the court erred in fixing the price of the land at $171 per acre on the basis of the thirty-three thousand dollars actually paid instead of twenty-eight thousand dollars described in the contracts as the "purchase price." The argument is that the sum of five thousand dollars was intended merely as a bonus for the right to make the purchase. Conceding this it does not follow that in estimating the damage due to the partial failure of the title of defendants, the initial payment should be disregarded. Calling this money a "bonus" does not mitigate plaintiff's loss.

Appellants further contend that the contracts were merely for the sale of their land in gross. It is true that after specifying the section and quarter-sections to be sold, the contract recites that the description is intended to apply to

CLXXIII Cal.—45

all of the lands owned by the Olneys lying west of the east bank of Butte Creek, "as described above, except the northwest quarter of the southwest quarter where the middle of Butte Creek shall be the dividing line." There is no force in the contention that by this language the Olneys merely promised to convey title to whatever land they might own in that vicinity. The purpose of the limitation was evident. It was to prevent the vendees or their assigns, after payment of the purchase price, from asserting title to any of the land covered by the description according to subdivisions, yet lying east of the line fixed. In other words, it was a limitation of a general description by specific boundary lines. In *Lawson* v. *Floyd,* 124 U. S. 108, [31 L. Ed. 347, 8 Sup. Ct. Rep. 409], cited by appellants in support of this point, the land was described in the contract as "about one thousand acres of land lying on the east side of Guyandotte and north of Aracoma," and again as a tract "estimated to contain one thousand acres." That case does not support the contention of appellants when applied to the description which we are here considering. In this connection it is argued that there is no evidence of mistake on Mrs. Olney's part with reference to her title to the land described; but the record shows that in the lease the particular tract of twenty acres to which she had no title was specifically described as her land and that of her husband just as it had been in the other contracts previously made; and in her deposition taken after the commencement of this action, Mrs. Olney set forth her belief that at the time the contract of sale was made she owned this very land.

It is argued that the court erred in fixing damages for the failure of title in and to the twenty-acre tract on the basis of the proportion which it bore to the whole area described in the contract. Appellants say that the recovery should have been limited to the value of the land, and call attention to testimony that the property never was worth more than ten dollars an acre, and that a subsequent purchaser of the land once owned by Martin estimated its value as being one hundred dollars an acre. While it is true that where a buyer has proven his right to specific performance and title fails as to a part of the land on which are situated improvements, he will be entitled to compensation for the actual value of

the improved property. But we are not confronted with any such state of facts. There was no testimony tending to show a difference in value in Martin's land and that owned by defendants. There was some evidence that plaintiff had paid too much for the entire tract to which defendants claimed title, but the fact remained that the corporation had paid for it at the very price per acre fixed by the court. In *Quarg* v. *Scher,* 136 Cal. 406–411, [69 Pac. 96], it was laid down as a rule of decision that where a court of equity finds itself unable to enforce conveyance of all of the land described in a contract of sale, it will compel compliance with the agreement as far as possible at the rate agreed upon between the contracting parties. A necessary corollary to this rule is that the same measure must be applied in estimating the proportion of the purchase price recoverable by one who has mistakenly paid for more land than the vendor is able to convey. In other words, the compensation allowed for the deficiency in quantity should be at the rate of the average price paid for the entire tract. (*Kelly* v. *Riley,* 22 W. Va. 247–251.) The court applied the correct measure of damages. The case of *Tyson* v. *Eyrick,* 141 Pa. St. 296–313, [23 Am. St. Rep. 287, 21 Atl. 635], cited by appellants, does not support their contention. In that case the vendor had in good faith assumed to convey title to land having a frontage of fifty feet. As matter of fact, the title failed as to one foot of frontage, the land extending the entire depth of the lot. After learning of this defect the vendee continued to make payments according to the terms of his agreement and did not seek to rescind. The court held that, under the circumstances, he was entitled merely to an allowance for the proportionate value of one foot of ground to be computed upon the basis of the consideration provided by his contract. That case is authority for the rule followed by the trial court in this case. In *Wheeler* v. *Boyd,* 69 Tex. 293–297, [6 S. W. 614], the court condemned an instruction which permitted two deductions on account of the shortage of land—one on the basis of the proportion arising from the relation of the amount not conveyed to the whole tract and another based upon the *value* of the acreage cleared in case the court should find that the property was less open than the vendor represented it to be. The case is not in point.

Appellants assert that the court had no power to set aside the compromise agreement based upon the mutual belief that the vendors had the absolute right to declare a forfeiture because the final payment of the purchase money was not timely made. Even conceding (say appellants), under *Boone* v. *Templeman,* 158 Cal. 290, [139 Am. St. Rep. 126, 110 Pac. 947], *Boyd* v. *Warden,* 163 Cal. 155, [124 Pac. 841], *Stevinson* v. *Joy,* 164 Cal. 279, [128 Pac. 751], and other cases of similar import, that a waiver of the right to forfeiture of the contract without notice had resulted from their conduct as vendors, nevertheless (as they contend), the vendee's right was merely one which the court might have sustained if appealed to, and was therefore one which might be the subject of compromise. In this behalf they cite such cases as *Bank of Commerce* v. *Scofield,* 126 Cal. 156–159, [58 Pac. 451]; *Spielberger* v. *Thompson,* 131 Cal. 55–58, [63 Pac. 132, 678], and *Rohrbacher* v. *Aitken,* 145 Cal. 485, [78 Pac. 1054]. The principle of the cited cases is that the courts favor findings declaring compromise agreements which have been made in good faith supported by considerations, even if the litigation compromised or the claims surrendered might not have been susceptible of full enforcement. But in the case at bar the vendee was entitled to full performance on tender of the final portion of the purchase price, because the Olneys had by their conduct waived those parts of the agreements of sale making time of the essence of the transaction. The course of business between the plaintiff and the defendants brought this sale under the rule declared in *Boone* v. *Templeman, supra,* and removed it from the category of contracts considered in such cases as *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Oursler* v. *Thacher,* 152 Cal. 739, [93 Pac. 1007]; *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, [123 Pac. 363], and *Myers* v. *Williams,* 173 Cal. 301, [159 Pac. 982]. Both parties acted under a mistake of law, and there was therefore no consideration for the lease. Respondent was entitled to rescind the contract of lease made by reason of mistake of law or of fact. (Civ. Code, sec. 1689, subd. 1.) If plaintiff would not have consented to the lease except for the mistake of law which led to the belief that an arbitrary forfeiture of all the money paid and all the rights of the pur-

chaser could be declared, then the corporation was entitled, upon discovery of the mistake, to rescind the lease. That there was such mistake of law there can be no doubt, and we do not doubt the power of a court of equity to uphold the rescission. (*Hannah* v. *Steinman,* 159 Cal. 142–146, [112 Pac. 1094].)

Let the judgment be modified as indicated herein by striking from it the sum of $1,078.45, and as so modified it is affirmed. The order denying the motion of appellants for a new trial is affirmed.

Henshaw, J., and Lorigan, J., concurred.