[Civ. No. 2683.   Second Appellate District, Division Two.—June 22,
1920.]

ARTHUR ANDERSON, Administrator, etc., Respondent, v.
A. D. WILLSON, Trustee, Appellant.

[1] NOTICE—RECORDATION OF CONVEYANCE—CONSTRUCTIVE NOTICE.—
Every conveyance of real property, acknowledged or approved and
certified and recorded as provided by law, is constructive notice of
the contents thereof to subsequent purchasers; and this presump-
tion of notice is conclusive and incontrovertible.

[2] VENDOR AND VENDEE—WANT OF TITLE IN VENDOR—VALIDITY OF
CONTRACT.—A vendor may sell land to which he has no title, and
the contract will be valid and enforceable if, when the time for
performance arrives, he is able to furnish the title he contracted
to convey; and his contract will not be held fraudulent or void
by virtue of the mere fact that, when he made it, he did not
have the title that he agreed to pass to his vendee.

[3] ID.—FRAUDULENT REPRESENTATIONS BY VENDOR—PARTIAL FAILURE
OF TITLE—SPECIFIC PERFORMANCE.—Where the vendor fraudulently
represents himself to be the owner of more land than he has title
to, his vendee, nevertheless, may enforce specific performance; and
if, in enforcing the contract, the court finds itself unable to en-
force conveyance of all the land the vendor agreed to convey, it
will compel compliance with the agreement, so far as possible, by
compelling the vendor to convey such title as he has on being
paid therefor at the rate agreed upon between the contracting
parties—the compensation allowed for the deficiency in quantity
being at the rate of the average price agreed to be paid for the
entire tract.

[4] ID.—RIGHT OF WAY FOR CANAL—MEANING OF WORDS—INTENTION
OF PARTIES.—Whether, in any particular case, the words "right
of way for a canal" mean a mere easement in the land of another

---

3. Right of specific performance with compensation of contract of
sale for land, note, Ann. Cas. 1915D, 1108.

for the use of a canal or the strip of land over which the canal runs, is purely a question of intention; and the sense in which the words are employed by the contracting parties in any given case will depend upon their intention as disclosed by the language of their contract, aided, when proper, by reference to the attendant circumstances.

[5] ID.—UNDERSTANDING OF CONTRACT—CONSTRUCTIVE NOTICE.—Unless the parties to a contract have actual notice of a fact, knowledge of which may be useful in arriving at a conclusion respecting their intention or how they understood the language of their contract, no amount of merely constructive notice will aid in solving the question as to their intention or their understanding of their agreement.

[6] ID.—RIGHT OF WAY "ON AND OVER" LAND—EASEMENT—UNDERSTANDING OF VENDEE—INTENTION OF PARTIES.—A representation by the vendor of certain lots that they are subject to a right of way "on and over" a strip of land four rods wide is equivalent to a representation that the lots are subject to an easement only; and where the vendee so understood the words and, in entering into the contract of purchase, relied on such representation, neither the vendor nor his grantee will be heard to say that the vendee's understanding of such words was not the meaning intended by both parties to the agreement.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bradley & Bradley for Appellant.

D. E. Perkins and Frank Kauke for Respondent.

FINLAYSON, P. J.—Defendant, on the judgment-roll alone, appeals from an adverse judgment. While this appeal was pending, the original plaintiff and respondent, John P. Clark, died, and the administrator of his estate, Arthur Anderson, was substituted in the suit. Notwithstanding this substitution, we shall, for convenience, refer to the original plaintiff, Clark, as the plaintiff in the action and the respondent on this appeal.

From the findings it appears that on March 5, 1908, the plaintiff, John P. Clark, and Thomas H. Thompson, defendant's grantor, entered into a written contract whereby Thompson, as vendor, agreed to sell and convey, and plaintiff,

as vendee, agreed to purchase, for four thousand eight hundred dollars, payable in installments, four lots in Tulare County. The property that Thompson thus agreed to convey to plaintiff is described in their contract as follows: "Lots One, Three, Six and Seven of Riverside Colony, as shown and delineated on the map of said Colony on file in the office of the County Recorder for the said county of Tulare, save and except some rights of way granted to the Consolidated Canal Company."

Prior to this contract, namely, on October 28, 1905, the California Savings and Loan Society, the then owner of the lots, had deeded to the Consolidated Canal Company a strip of land, four rods wide, on and along the north and east sides of lot 3, on and along the east side of lot 6, and on and along the south side of lot 7. So that, when plaintiff entered into his written agreement with Thompson to purchase the lots, the latter did not own the title, in fee, to every part of each of the four lots, free of all encumbrances, save a mere right of way or easement in favor of the Consolidated Canal Company for a canal, but the canal company owned the fee to all of a strip of land, four rods wide, along the north and east sides of lot 3, along the east side of lot 6, and along the south side of lot 7. The deed to the canal company was duly recorded on November 6, 1905, in the office of the county recorder.

At the time when plaintiff and Thompson entered into their written agreement, the latter represented to plaintiff that he then owned all of the four lots, and that he held the fee simple title to the whole thereof, "free and clear of all encumbrances, save and except a right of way for a canal theretofore granted to the Consolidated Canal Company, a corporation, to wit, a right of way *on and over* a strip of land four rods wide on and along the north and east sides of lot 3, on and along the east side of lot 6, and on and along the south side of lot 7." Plaintiff believed this representation and relied upon it in making the contract to purchase the lots, and had no actual notice that there had been conveyed to the canal company the fee to a strip of land, four rods wide, on and along the sides of the lots.

Under the terms of the agreement between plaintiff and Thompson, the last installment of the purchase price was

payable March 5, 1911, when, if all payments were made as they fell due, plaintiff, under the terms of his contract, would be entitled to a deed to the land for which he had bargained. Plaintiff, prior to March 5, 1911, promptly paid the several installments that had previously accrued, and, on March 5, 1911, offered to make payment of the final installment if Thompson, his vendor, would convey to him title to the lots, encumbered only with a right of way or easement for a canal or canals. This Thompson was unable to do, for the canal company owned the fee to a part of the lots, namely, the fee to a strip four rods wide on and along the sides of the lots, instead of a mere easement or right of way on and over the lots, as represented to plaintiff when he bargained for the property. Though unable to comply with plaintiff's offer, Thompson, nevertheless, demanded that plaintiff pay him the full amount of the balance of the purchase price as a condition precedent to a conveyance of the lots with the strip four rods wide excepted therefrom. This plaintiff declined to do; instead, he offered to pay Thompson the balance of the purchase price less a certain amount found by the court to be the value of the title that Thompson was unable to convey by reason of the previous conveyance of the four-rod strip to the Consolidated Canal Company. Thompson thereafter conveyed the property to defendant, who took with knowledge of the contract previously made by his grantor with plaintiff.

Plaintiff brought this action to compel specific performance of Thompson's contract to convey to him the four lots, subject only to a right of way for a canal, on payment of the balance of the purchase price, or, in the event that defendant could not give all the title which plaintiff claimed he had bargained for in his contract with defendant's grantor, that defendant be ordered to convey to plaintiff title to such portion of the land as he owned, and that there be deducted from the purchase price an amount equal to the value of the part of the land to which defendant could not give title. The court found that defendant could not give title to the strip four rods wide, and that, at the rate agreed upon by plaintiff and Thompson in their contract, the amount already paid by plaintiff on the purchase price exceeded the value of the land to which defendant could give

title. The decree adjudges that, without any further payment by plaintiff, defendant forthwith convey to the former title to the land, excepting that portion, four rods wide, running on and along the sides of the lots, previously conveyed to the Consolidated Canal Company. From this judgment defendant has appealed, contending that the constructive notice of the deed to the canal company, afforded by its registration in the county recorder's office, raises a conclusive presumption that, at the time when he contracted with Thompson for the purchase of the lots, plaintiff had notice of the prior deed to the canal company, that, therefore, plaintiff is bound thereby, and that, consequently, payment of the full amount of the agreed purchase price is a condition precedent to any right to a conveyance.

[1] Every conveyance of real property, acknowledged or approved and certified and recorded as provided by law, is "constructive notice of the contents thereof to subsequent purchasers." (Civ. Code, sec. 1213.) Without doubt, the presumption of notice thus raised by this code provision is conclusive and incontrovertible. (39 Cyc. 1719, 1720.) Says the court in *Fair* v. *Stevenot*, 29 Cal. 488: "A recorded deed is an instance of constructive notice, and upon proof being made that it has been duly recorded, the presumption of notice to the subsequent purchaser arises, and the presumption is a conclusive presumption of law, and no opposing evidence is admissible." Plaintiff, therefore, could not have taken a conveyance of the lots from Thompson, or from defendant as Thompson's successor in interest, and have claimed that he was a *bona fide* purchaser without notice, and that, therefore, he, and not the canal company, owned the strip four rods wide on and along the sides of the lots. The primary purpose of registration acts is to protect the true owner of the legal title, who may not be in possession, against the claims of subsequent purchasers, by conclusively imputing to the latter notice of all previously recorded conveyances. And, of course, the recording of the deed to the canal company would secure its title from defeat by any subsequent sale of the land to plaintiff as an alleged innocent purchaser.

[2] But, though plaintiff could not defeat the title of the canal company under any claim that he was an innocent

purchaser without notice of the prior deed to that company, he, nevertheless, could contract with Thompson for title to all the land contained within the boundaries of the four lots, and the latter could contract to give title thereto. It is not necessary that a vendor should be the absolute owner of the property at the time he enters into the agreement of sale. One, in good faith, may sell land which he does not own, and yet, when the time for performance arrives, be able to furnish a good title. It is the settled rule in this state that the vendor need not have even an inchoate title at the time of the contract; that he may sell land to which he has no title, and the contract will be valid and enforceable if, when the time for performance arrives, he is able to furnish the title he contracted to convey. His contract will not be held fraudulent or void by virtue of the mere fact that, when he made it, he did not have the title that he agreed to pass to his vendee. (*Hanson* v. *Fox*, 155 Cal. 106, [132 Am. St. Rep. 72, 20 L. R. A. (N. S.) 338, 99 Pac. 489]; *Backman* v. *Park*, 157 Cal. 607, [137 Am. St. Rep. 153, 108 Pac. 686]; *Brimmer* v. *Salisbury*, 167 Cal. 522, 530, [140 Pac. 30].) [3] And even where the vendor fraudulently represents himself to be the owner of more land than he has title to, his vendee, nevertheless, may waive the fraud and his right to rescind the contract and may sue to enforce specific performance; and if, in enforcing the contract, the court finds itself unable to enforce conveyance of all the land the vendor agreed to convey, it will compel compliance with the agreement, so far as possible, by compelling the vendor to convey such title as he has on being paid therefor at the rate agreed upon between the contracting parties—the compensation allowed for the deficiency in quantity being at the rate of the average price agreed to be paid for the entire tract. (*Quarg* v. *Scher*, 136 Cal. 411, [69 Pac. 96]; *Butte Creek etc. Co.* v. *Olney*, 173 Cal. 697, 707, [161 Pac. 260].) This is precisely what was done by the trial court here.

[4] As we view the case, the real question here is one respecting the intention of the contracting parties, Thompson and Clark. What did these two intend when, in their written agreement, they excepted from the conveyance to be made by Thompson "some rights of way granted to the Consolidated Canal Company"? What did they mean by

these words, "some rights of way"? Technically, a right of
way is an easement; and a right of way for a canal is, prop-
erly speaking, nothing more than a mere easement in the
land of another. (Civ. Code, sec. 801, subd. 4; *Blake* v.
*Boye*, 38 Colo. 55, [8 L. R. A. (N. S.) 418, 422, 88 Pac.
470] ; 34 Cyc. 1767.)   As generally used, however, the term
"right of way," when applied to railroads, canals, and similar
instrumentalities, has no exact, well-defined meaning, but
often is susceptible of a twofold signification. It is used
indiscriminately to describe, not only the easement, or special
and limited right to use another person's land, but as well
the strip of land itself that is occupied for such use. This,
at any rate, is the case when the term is used with respect
to railroads. (*Kansas City etc. R. Co.* v. *Littler*, 70 Kan.
556, [79 Pac. 114]; *Central Trust Co.* v. *Wabash etc. Ry.
Co.*, 29 Fed. 555.)   And we see no reason why it should
not be equally true when the words are used with respect to
a canal. So that, whether, in any particular case, the words
"right of way for a canal" mean a mere easement in the
land of another for the use of a canal or the strip of land
over which the canal runs, is purely a question of intention;
and the sense in which the words are employed by the con-
tracting parties in any given case will depend upon their
intention as disclosed by the language of their contract,
aided, when proper, by reference to the attendant circum-
stances.

The question, therefore, that confronted the court below
was this: In what sense did plaintiff and his vendor,
Thompson, use the words "save and except some rights
of way granted to the Consolidated Canal Company"?
Did they intend thereby to except from the grant to be
made by the vendor a mere easement for the use of the
canals of the Consolidated Canal Company? Or, did they
intend to except a strip of land, occupied or to be occupied
by the canals of that company? It is no answer to this ques-
tion to say that plaintiff was conclusively charged with con-
structive notice of the prior recorded deed to the canal
company. Intention is a state or condition of the mind.
And while a concept, or state of mind, may depend upon or
be influenced by facts of which the person has actual knowl-
edge—facts of which he actually is or has been conscious—it

cannot be engendered or in anywise conditioned or influenced by facts of which he always has been ignorant, even though they be facts notice of which the law imputes to him constructively for the purpose of protecting the title of the real owner against the claims of subsequent purchasers. In arriving at the intention of the contracting parties, we can derive no aid from the fact that section 1213 of the Civil Code raises a conclusive presumption of constructive notice. [5] Unless the parties to a contract have actual notice of a fact, knowledge of which may be useful in arriving at a conclusion respecting their intention or how they understood the language of their contract, no amount of merely constructive notice will aid in solving the question as to their intention or their understanding of their agreement. The sense in which the parties to this contract used the words ''some rights of way'' is to be determined, therefore, from what they actually knew, not from what the law says they must be deemed to have known, in order that the title of a former grantee, the Consolidated Canal Company, may be secured against defeat by the subsequent sale to the plaintiff here. As against the canal company, plaintiff cannot successfully claim that he is a *bona fide* purchaser for value and without notice. But there is nothing in the registry provisions of the Civil Code that prevents him from saying how he understood the words ''some rights of way'' were employed in his contract, or that prevents him from claiming that they were used to describe mere easements, or rights of way in the true and technical sense of the term.

There is no finding that plaintiff actually knew that the ''rights of way'' of the canal company consisted of a four-rod strip of land that had been conveyed to it in fee in 1905 by a duly recorded deed. On the contrary, the court found that, at the time when plaintiff entered into his contract with Thompson to purchase the lots, his vendor represented to him that he owned the whole of each lot and ''that he held the fee-simple title thereto, free and clear of all encumbrances, save and except a right of way for a canal theretofore granted to the Consolidated Canal Company, a corporation, to wit, a right of way *on and over* a strip of land four rods wide on and along'' the sides of the lots. [6] The representation that the lots were subject to a right of way

"on and over" a strip of land four rods wide was equivalent to a representation that the lots were subject to an easement only—an easement in the strip of land four rods wide along the sides of the lots. The court found that plaintiff believed and relied upon this representation. It is clear, therefore, that the parties to the contract, or, at any rate, one of them, the plaintiff here, understood the words of the contract to mean that there was excepted from the property to be sold an easement only, to wit, a certain right of way "on and over" a strip of land four rods wide. Neither the vendor, whose representations induced plaintiff's understanding of the contract, nor his grantee, the defendant here, can now be heard to say that plaintiff's understanding of the words "rights of way" was not the meaning intended by both parties to the agreement.

It is of no consequence that defendant finds himself unable to give all the title that plaintiff understood he had bargained for and purchased. As already shown, a person who has agreed to convey more title than he has, or can acquire, may be compelled to convey to his vendee such title as he possesses, upon being paid therefor at the rate agreed to be paid for all the property bargained for by the vendee. That is precisely what this judgment does, and it is, we think, supported by the facts found by the trial court.

Judgment affirmed.

Thomas, J., and Weller, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1920.

Angellotti, C. J., Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.