[Civ. No. 10306. Fourth Dist., Div. One. Aug. 23, 1971.]

D-K INVESTMENT CORPORATION et al., Plaintiffs and Appellants, v. IRVING SUTTER et al., Defendants and Appellants.

## COUNSEL

Richards, Watson & Hemmerling, Clifford A. Hemmerling and James J. Cook for Plaintiffs and Appellants.

Robert P. Schifferman for Defendants and Appellants.

## OPINION

**COUGHLIN, Acting P. J.**—Plaintiffs and defendants, respectively, appeal from parts of a judgment in an action for specific performance. Defendants also appeal from an order denying their motion to set aside the judgment pursuant to Code of Civil Procedure section 663.

In March 1965 Lachula Land Investors sold six acres of land to defendant Sutter for $160,000. It was the intention of the parties the purchaser was to develop the land as a shopping center which would enhance the value of contiguous property owned by the seller. The parties agreed Sutter would grant an option to nominees of the seller to repurchase the property in the event construction of a market building on the property

had not commenced prior to May 11, 1966. A separate written option agreement was executed which granted the optionee therein named "the exclusive right to purchase the real property during a period commencing with May 11, 1966, and ending with July 11, 1966"; provided the "option shall be null and void if prior to May 11, 1966, construction shall have commenced on the construction of a market building on the real property"; and provided further: "Construction shall be deemed to have commenced if a building permit for such construction shall have been issued by the City of Chula Vista and the lien period for the work of improvements shall have commenced under the mechanics' lien law of the State of California." The purchase price under the option was $170,000. To exercise the option the buyer was required to give a "Notice of Exercise addressed to Seller, delivered personally to Seller on or before the expiration of the option period." It was expressly provided: "Notices in person may be served upon Seller or Buyer by delivery" to their addresses, which were specifically set forth.

Plaintiffs acquired the option rights of the optionee.

On November 12, 1965, Sutter sold a corner portion of the property to a bona fide purchaser without notice for $70,000.

On April 26, 1966, Sutter caused nine soil test holes to be drilled on the property. Each hole was 6 inches in diameter by 21 feet in depth. The engineering company conducting the tests filed with Sutter a report of the testing. Sutter also caused architectural and engineering work to be performed which resulted in plans and specifications for the construction of a market building. On May 6, 1966, Sutter obtained a building permit from the City of Chula Vista. The permit was subject to several conditions requiring further action by Sutter and governmental agencies. After May 11, 1966, Sutter took no steps to commence the construction of a market building on the property. On July 11, plaintiffs gave notice of the exercise of the option by delivering a written notice personally to Sutter's secretary at his office at the address set forth in the option agreement. Sutter was not present at the time.

The option agreement provided: "Within five (5) days after the exercise of the option, Buyer and Seller shall open an escrow. . . ." The buyer was required to deposit the purchase price in the escrow before close of escrow. Sutter refused to proceed with the sale, contending the option agreement had expired because he had commenced construction of the market building as therein provided. An escrow was not opened. The purchase price was not deposited.

Plaintiffs brought this action to obtain specific performance. Defendant

Podus was joined as a party when, after commencement of the action, he recorded a conveyance to him and his wife from Sutter of a one-half interest in the property.

The court found Sutter had complied literally with provisions of the option agreement respecting commencement of construction of a market building but had not complied with them in good faith; for this reason the option agreement was not terminated; plaintiffs exercised the option in the manner prescribed by the agreement; defendants refused to perform; and specific performance was a proper remedy. The court fixed the purchase price payable by plaintiffs, which did not include interest thereon from the date the option was exercised. Judgment was entered accordingly. Defendants appeal from that part of the judgment decreeing specific performance and fixing the purchase price without interest, and also from an order denying their motion to vacate it pursuant to Code of Civil Procedure section 663.

The court also found the purchase price payable by plaintiffs should be abated in the sum of $70,000, i.e., the amount received by Sutter from his sale of a part of the property; and Sutter should receive $2,391.25 on account of real property taxes and all further taxes paid by him up to the close of escrow. Judgment was entered accordingly. Plaintiffs appeal from this part of the judgment.

█ Defendants contend Sutter had commenced construction of the market building within the meaning of the option agreement; for this reason the agreement had terminated; the option was not exercised in accordance with its terms; there was no evidence plaintiffs had the financial ability to purchase the property and the finding of the court to the contrary was error; the failure to provide for and protect the interest of Mr. and Mrs. Podus in the property was error; and the purchase price payable by plaintiffs should have included interest from the date of exercise of the option.

Plaintiffs contend the option agreement had not terminated; the finding by the trial court defendants complied literally with the terms of the agreement was not supported by the evidence; and, in any event, literal compliance with the terms of the agreement respecting commencement of construction did not terminate the option because impliedly the agreement required compliance in good faith, which did not occur.

Initially we note defendants' contention the court erred in admitting parol evidence respecting the meaning of the agreement. This contention is premised on the claim the provisions of the agreement are clear; declared the option would terminate if before May 11, 1966, a permit for construc-

tion of a market building on the property had been issued and the lien period for the work of improvement had commenced under the mechanics' lien law of the State of California. It is apparent from the agreement the existence of the option was premised on the failure to commence construction of the market building or, stated otherwise, the nonexistence of the option was premised on commencement of construction of the market building. The provision that: "Construction shall be deemed to have commenced if a building permit for such construction shall have been issued by the City of Chula Vista and the lien period for the work of improvement shall have commenced under the mechanics' lien law of the State of California," in substance, prescribed what factors should be considered in determining when construction had commenced. It did not substitute these factors in lieu of the provision predicating the life of the option upon commencement of construction of a market building. This distinction is pertinent to a determination whether the court erred in admitting evidence on the issue of good faith, and in concluding the implied covenant of good faith related to the construction of the market building as distinguished from merely obtaining a building permit or doing some work which would constitute commencement of a lien period for the work of improvement under the mechanics' lien law. The evidence supports the conclusion the original sale to Sutter contemplated and was premised on his developing a shopping center which would include a market building, and in the event Sutter did not proceed to develop such a center and construct such a market building the original sellers, or their successors, should have the opportunity to repurchase the property. The purpose of the option agreement was to effect this basic understanding. In light of these circumstances, merely obtaining a building permit or doing work which would commence a lien period under the mechanics' lien law without intent to construct a building would not have effected the purpose of the option agreement, and would not have constituted compliance with the terms of that agreement in good faith. The evidence amply supports the conclusion of the trial court Sutter had no intention of commencing construction of the market building. In substance, Sutter merely went through the motions of commencing construction of the building when he obtained the building permit and caused test holes to be drilled into the ground. The conclusion of the trial court respecting the existence and effect of an implied covenant of good faith under the circumstances at bench is sustained by an application to the facts in the case of the law stated and applied in *Brown* v. *Superior Court,* 34 Cal.2d 559, 564 [212 P.2d 878], *Nelson* v. *Abraham,* 29 Cal.2d 745, 750 [177 P.2d 931], *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.,* 20 Cal.2d 751, 771 [128 P.2d 665], *Meyer* v. *Ford Motor Co.,* 275 Cal.App.2d 90, 104 [79 Cal.Rptr. 816], *Mc-*

*Williams* v. *Holton,* 248 Cal.App.2d 447, 451 [56 Cal.Rptr. 574], and *Harm* v. *Frasher,* 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].

■ Furthermore, the finding of the trial court the lien period for the work of improvement commenced under the mechanics' lien law before May 11, 1966, is without evidentiary support. The drilling of test holes on the property was not the work of improvement contemplated by the option agreement which was the construction of a market building. It was not a part of the contract to construct the building. At most, drilling the test holes was a separate work of improvement which preceded the work of improvement for which a lien period would commence on account of construction of the proposed market building. (*Walker* v. *Lytton Sav. & Loan Assn.,* 2 Cal.3d 152, 159 [84 Cal.Rptr. 521, 465 P.2d 497].)

It is a matter of note, drilling the test holes, which allegedly was an act commencing construction of the market building, occurred on April 26, 1966, whereas the permit to construct the building was not issued until May 6, 1966.

In addition, when the test holes were drilled, i.e., in 1966, the mechanics' lien law did not confer a lien right for test hole drilling. The right to such a lien was conferred in 1967 by an amendment to section 1184.1 of the Code of Civil Procedure.

■ Defendants' contention plaintiffs did not exercise the option in accordance with the terms of the agreement is predicated upon the claim the latter did not personally serve Sutter with the "Notice of Exercise" and did not open an escrow within five days and deposit therein the purchase price as required by the agreement.

The "Notice of Exercise" of the option was served on Sutter personally by delivering it to his secretary at his office on July 11, 1966. This method of personal service was specifically provided by the option agreement.

The court found plaintiffs were not required to open an escrow or deposit the purchase price therein as provided in the agreement because on July 13, 1966, Sutter, through his attorney, repudiated the agreement; and their opening the escrow or depositing the purchase price therein would have been a useless act. The agreement specifically provided the escrow should be opened by both the seller and the buyer. Mutual action was required. Sutter, by his actions, not only refused to participate in opening the escrow but also claimed the option agreement had terminated and plaintiffs had no right to the property. Further, it should be noted plaintiffs were not obliged to deposit any funds in escrow until the escrow had been opened and was ready to be closed. Sutter's failure to open the escrow foreclosed deposit of the purchase price therein. The finding and conclusion of

the court in question is sustained by the evidence and the law in the premises. (*Collins* v. *Marvel Land Co.*, 13 Cal.App.3d 34, 41 [91 Cal. Rptr. 291].)

■ Defendants' contention the court erred in finding plaintiffs had the financial ability to purchase the property is premised upon the claim the evidence is insufficient to support the finding. ■ It is fundamental when the sufficiency of the evidence to support a finding is attacked on appeal the appellate court must accept every inference reasonably deducible from the evidence which supports the finding. (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].) ■ A finding the buyer seeking specific performance of a contract has the ability to purchase is supported by proof "he commanded resources upon which he could obtain the requisite credit." (*Merzoian* v. *Kludjian*, 183 Cal. 422, 430 [191 P. 673]; see also *Am-Cal Investment Co.* v. *Sharlyn Estates, Inc.*, 255 Cal.App.2d 526, 546 [63 Cal.Rptr. 518].) ■ The evidence shows plaintiffs were the owners of property contiguous to and in the immediate vicinity of the property in question. Without any opinion evidence on the issue, the circumstances support the conclusion the amount of property owned by plaintiffs clearly exceeded in value the amount of property which was the subject of the option agreement and would have afforded adequate basis for extending them credit to purchase the property described in the option agreement. Defendants did not offer any evidence on the issue. The finding is adequately supported.

■ On May 9, 1966, Sutter deeded a one-half interest in the property to defendant Podus and his wife. The deed was not recorded until October 18, 1967, which was after commencement of the action at bench and the recording of a lis pendens. The trial court concluded plaintiffs were entitled to a judgment against Podus declaring he had no interest in the property and ordering him to execute a quitclaim deed to them concurrently with the close of escrow provided for in the decree. The judgment decreed accordingly. Obviously the conclusion and judgment in question are limited to a determination Podus had no interest in the property as against plaintiffs, who had no notice of the transfer to Podus before exercising their option. The conclusion and judgment were correct. (Gen. see Civ. Code, § 1214.) Defendants' contention to the contrary is without merit. In the event Podus claims a share of the purchase price payable by plaintiffs his remedy is to obtain relief from the trial court. The record does not indicate he sought such relief.

■ Defendants' contention the judgment should have directed plaintiffs to pay interest on the purchase price from date of exercise of the option to closing of escrow also is without merit. In an action for specific

performance against a vendor in default, the amount of interest to which he is entitled may not exceed the amount of the rents with which he is chargeable. (*Simmons* v. *Dryer,* 216 Cal.App.2d 733, 746 [31 Cal. Rptr. 199]; *Greenstone* v. *Claretian Theo. Seminary,* 173 Cal.App.2d 21, 37 [343 P.2d 161].)

■ Plaintiffs, in support of their appeal, contend the court erred in abating the option price by the amount received by Sutter from the sale of a part of the property instead of by the market value of that property as of the time of the exercise of the option; and also erred in reimbursing Sutter for the taxes assessed against the property and paid by him.

On November 12, 1965, Sutter sold a corner portion of the property to "WFMF Investment Corp.," a bona fide purchaser for value without notice, for $70,000. The parties to the option agreement agreed it should not be recorded, but Sutter would advise any purchaser of the property of its existence. Sutter did not advise WFMF Investment Corp. of the option agreement. After the sale certain on-site and off-site improvements with respect to the property sold were made by Shell Oil Company, which then leased the property for service station purposes. The trial court found, on July 11, 1966 "the fair market value of the Corner, as improved, and of WFMF's interest in the Shell lease was $95,300, the price at which WFMF sold the same."

■ The applicable rule is stated in Restatement of the Law of Contracts, as follows: "A vendor of land who can not perform as agreed by reason of a shortage in area or a defect in title may be decreed to transfer all that is within his power, with compensation or indemnity for the partial breach. The court has wide discretion in the character of the remedy given for the shortage or defect. It may be compensatory damages, restitution of money already paid, or a proportionate abatement of the price that has not yet been paid. The apportionment will take into consideration acreage, improvements and relative values of the parts involved." (Rest., Contracts, § 365, subd. (c), p. 660; gen. see *Smiddy* v. *Grafton,* 163 Cal. 16, 18 [124 P. 433]; *Collins* v. *Marvel Land Co.,* 13 Cal.App.3d 34, 41 [91 Cal.Rptr. 291]; *Milkes* v. *Smith,* 91 Cal.App.2d 79, 82-83 [204 P.2d 419].)

■ In the case at bench both plaintiffs and defendants cite and rely upon the opinion in *Butte Creek Consol. D. Co.* v. *Olney,* 173 Cal. 697, 706-707 [161 P. 260], in support of their respective positions. The general rules stated in the cited case describe methods for determining the amount of an abatement premised upon the value of the property subject to the contract of sale; do not contemplate a situation such as at bench, where

the property subject to an option to purchase was unimproved at the time of the execution of the option agreement but a part thereof became improved before the exercise of the option over a year later; and did not limit the general equitable powers of the court in a specific performance action. When the option agreement was executed all the property subject to it was unimproved. When Sutter sold the corner property it was unimproved. When the option was exercised, and the contract which is the subject of the action at bench came into being, improvements had been placed upon the property by the purchaser of the corner and its lessee. The purpose of the option agreement was to assure the development of the property originally sold as a shopping center, rather than to confer upon the optionee an opportunity to benefit from the activity of the optioner resulting in improvements. The fact a service station was constructed upon the corner advanced the purpose of the parties to create a shopping center. Plaintiffs, upon the exercise of the option, obtained the balance of the property and the contemplated benefit of the improvement. Defendant Sutter, in effect, relinquishes all benefits he received from the sale of the corner. We conclude the determination to abate the purchase price by the amount Sutter received from the sale of the corner, i.e., $70,000, was a proper exercise of discretion within the scope of the court's equitable powers.

 Plaintiffs' contention the court erred in allowing Sutter the credit for taxes paid by him is premised on the dual theories Sutter, upon the exercise of the option, became an involuntary trustee holding the property for the benefit of plaintiffs and, as such, was not entitled to reimbursement for his expenses in keeping the property, such as the payment of taxes; and Sutter, as vendor, under the law and the option agreement, was required to deliver title free of any tax lien except that imposed for the tax year current with the close of escrow, as to which the liability for taxes was to be prorated.

Preliminarily it is pertinent to note the court found: "From the date of the Agreement to the time of trial, Mr. Sutter has paid the sum of $2,391.25 on account of real property taxes assessed against the Property"; and decreed the purchase price to be paid by plaintiffs should be computed as follows: "$170,000.00 less $70,000.00 (the abatement) less $7,500.00 (attorneys' fees) plus the sum of $2,391.25 paid by Irving Sutter as of the time of trial on account of real property taxes plus all sums paid by Irving Sutter on account of real property taxes from the time of trial to date when the escrow shall close as provided in Paragraph 4 (c) of the Option Agreement." Also it should be noted the judgment decreed the court reserved jurisdiction to alter, amend or add to the

judgment to effectuate execution of the escrow and consummation of the sale.

Under the option agreement Sutter is required to deliver a title free and clear of any tax liens except the lien for the tax year current with the close of escrow; and taxes for the current year are to be prorated between Sutter and the buyer.

 The general rule governing the provisions of a decree of specific performance is stated in *Ellis* v. *Mihelis,* 60 Cal.2d 206, 220 [32 Cal. Rptr. 415, 384 P.2d 7], as follows: "If the court orders it [the contract] to be performed, the decree should as nearly as possible require performance in accordance with its terms. One of the terms is the date fixed by it for completion, and since that date is past, the court, in order to relate the performance back to it, gives the complainant credit for any losses occasioned by the delay and permits the defendant to offset such amounts as may be appropriate. The result is more like an accounting between the parties than like an assessment of damages."

Under this rule a purchaser should be treated as the owner of the property from the date of performance fixed by the contract; is entitled to the rents and profits from the property thereafter; but is required to pay the purchase price as of that date which would entail the loss of the use of the purchase funds during the period performance is delayed. On the other hand, a seller is entitled to use of the purchase funds from the date of completion fixed by the contract, which would amount to interest on the purchase price from that date for the period performance was delayed; but is not entitled to the rents and profits received during that period; and is chargeable with the rents and profits received less taxes and other authorized expenses. Where, as in the case at bench, the seller is in default, he is entitled to interest on the purchase funds only to the extent it is an offset against rents and profits from the property during the period of delayed performance. Also where, as in the case at bench, the buyer has retained use of the purchase funds from the date of completion fixed by the contract, he is not entitled to the rents and profits during that period except as the amount of the latter exceeds the amount of the interest on the purchase funds withheld. In any event, as noted, the rents and profits with which the seller is chargeable are the net rents and profits. The foregoing conclusions are premised on the opinions in *Ellis* v. *Mihelis, supra,* 60 Cal.2d 206, 219-221, *Butte Creek Consol. D. Co.* v. *Olney, supra,* 173 Cal. 697, 706-707, *Simmons* v. *Dryer, supra,* 216 Cal.App.2d 733, 746, and *Greenstone* v. *Claretian Theo. Seminary, supra,* 173 Cal.App.2d 21, 29, 37. (Gen. see 7 A.L.R.2d 1211, 1218, 1226, 1227.)

Under the general rule aforesaid plaintiffs, as owners of the property from the date of completion fixed by the contract, were required to pay the taxes on the property during the period of delayed performance; and, under the specific rule heretofore noted, were entitled to retain the use of the purchase funds during that period because Sutter was in default. It would be inequitable to permit plaintiffs to retain the use of the purchase funds during the period of delayed performance and require Sutter to pay the taxes on the property during that period. Were it shown the rents and profits from the property exceeded the taxes and other expenses deductible to determine net income, Sutter would have been reimbursed and would not have been entitled to a credit for the taxes in the accounting between the parties. However, there is no such showing.

We conclude from the evidence, the amount of taxes for the payment of which Sutter was given a credit in the sum of. $2,391.25, was the amount paid on taxes payable after the option was exercised on July 11, 1966. There is an uncertainty in the evidence respecting this matter. In the event the foregoing conclusion is incorrect, the court, in the exercise of its retained jurisdiction, may make a proper adjustment. Further in this regard, the court, also in the exercise of its retained jurisdiction, should make a more specific order respecting the matter of taxes; apply the rule heretofore noted, which directs the decree in a specific performance action should require performance as of the date fixed by the contract; direct the taxes for the tax year 1966-1967 should be prorated between the parties as of the date of completion which, under the contract, was 15 days after July 11, 1966, i.e., the date when the option was exercised; and further direct Sutter be allowed a credit for all taxes paid by him for tax years subsequent to the tax year 1966-1967, without duplicating the amount of $2,391.25 already allowed.

The judgment and order are affirmed. Each party to bear his own costs on appeal.

Whelan, J., and Ault, J., concurred.

A petition for a rehearing was denied September 15, 1971, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied October 21, 1971.