[Civ. Nos. 66429, 67955. Second Dist., Div. Three. Oct. 31, 1983.]

THOMAS N. STAGEN, Cross-complainant and Appellant, v.
STEWART-WEST COAST TITLE COMPANY et al.,
Cross-defendants and Respondents.

---

**COUNSEL**

Dreisen, Kassoy & Freiberg, Thomas A. Freiberg, Jr., Robert P. Friedman, Nutter, Bird, Marella, Boxer & Wolpert, Ralph H. Nutter and Dorothy Wolpert for Cross-complainant and Appellant.

Anderson, Ablon & Maseda and Stephen B. Maseda for Cross-defendants and Respondents.

Miller, Starr & Regalia and Harry D. Miller as Amici Curiae on behalf of Cross-defendants and Respondents.

---

**OPINION**

**DANIELSON, J.**—This is a consolidated appeal by cross-complainant Stagen from (1) a judgment on the pleadings in favor of Stewart-West Coast Title Company (hereinafter West Coast Title), and (2) a judgment on the pleadings in favor of Stewart Title Guaranty Company (hereinafter Title Guaranty), an affiliate of West Coast Title.

### FACTS

On August 20, 1976, Stagen, a licensed real estate broker, and Simon Bard entered into a written contract of sale, wherein Bard was to convey certain real property to Stagen. The property was the community property of Simon Bard and his wife Stella but was held by them as "husband and wife, joint tenants." Stagen was aware, through his agent, of Stella Bard's community interest in the property. Only the husband, Simon Bard, signed

the contract of sale, which was intended by both Stagen and Bard to cover the entire property and not merely an undivided one-half interest therein.

On October 7, 1976, after repeated demands for Bard's performance, Stagen filed an action against Simon Bard for specific performance. Stella Bard was not named as a defendant in Stagen's complaint. On the same date, Stagen recorded a notice of pending action (lis pendens) on the property.

On October 8, 1976, Simon Bard and Stella Bard conveyed the property to H. & G. Brown (½ interest), and J. & P. Mora (½ interest). In connection with this conveyance, either Bard, as the seller, or the Browns and Moras, as buyers, obtained the services of West Coast Title and Title Guaranty to search the record as an abstractor of title and to issue a policy of title insurance. The title report failed to disclose the existence of Stagen's lis pendens.

Stagen amended his complaint to include the Browns and Moras as co-defendants with Simon Bard. The Browns and Moras filed a cross-complaint against the Bards and Stagen. Stagen filed a cross-complaint against West Coast Title and Does 1 through 10 and later amended it to name Title Guaranty as a cross-defendant in place of Doe 1. Only the Stagen cross-complaint is involved in these appeals.

West Coast Title and Title Guaranty filed separate answers. On June 29, 1981, West Coast Title moved for a judgment on the pleadings on the ground that since Stagen was not in contractual privity with West Coast Title, and was not within the class of persons intended to be benefitted by the title report, no duty of care was owed to him. Hence, Stagen's cross-complaint failed to state a cause of action against West Coast Title. The superior court, Judge Chernow, granted the motion, and judgment for cross-defendant West Coast Title was entered. Stagen appealed from that judgment.

During the trial, Title Guaranty moved for a judgment on the pleadings, on the ground that the judgment in favor of West Coast Title left no cause of action against Title Guaranty because the cross-complaint did not allege any negligent acts or omissions by Title Guaranty.

The matter was tried initially before a jury (as to the legal causes of action) which determined that Bard had breached the land sale contract in bad faith. Stagen was awarded both actual and punitive damages. Thereafter, the equitable causes of action were tried by the court, which denied specific performance on the grounds that the property was the community

property of Simon Bard and his wife; Mrs. Bard was not a party to the contract; Stagen had notice of these facts; ordering specific performance would have required the court to enforce a contract that neither party intended to make; and Stagen's legal remedy was adequate.

After trial the superior court, Judge Ackerman, made and entered a judgment which included granting Title Guaranty a judgment on the pleadings. Stagen then appealed from that part of the judgment granting Title Guaranty a judgment on the pleadings.

The two appeals are here consolidated.

## CONTENTIONS

Stagen contends that where it is foreseeable to a negligent party that its acts would harm a particular third party, privity of contract is not required as a basis for liability. He maintains that respondent title companies were negligent in failing to disclose the lis pendens recorded in connection with his action for specific performance against Bard, the seller of the property. Stagen asserts that respondents knew, or should have known, that their omission of the lis pendens from the title report would jeopardize the rights of that class of individuals (e.g., persons, such as himself, who are claimants of an interest in the title to, or the right of possession of, real property) who reasonably rely on title companies to disclose the recordation of a lis pendens.

He argues that defendants are liable because the lis pendens was recorded with the reasonable expectation that if the seller attempted to sell the property to another buyer, the prospective buyer would not purchase property with such a cloud on its title. Stagen concludes that had the title companies acted in accordance with their duty to their insured no sale would have been completed, and the remedy of specific performance would have been practicable at trial.

## DISCUSSION

■ When abstractors are negligent in preparing a title report, recovery may be sought either in contract or tort. (*Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 146 [85 Cal.Rptr. 693]. Accord, *Lattin* v. *Gillette* (1892) 95 Cal. 317 [30 P. 545]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 123-125 [331 P.2d 742].)

*Recovery on the Contract*

Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the

parties thereto rescind it." The measure of damages for breach of a contract is as provided in Civil Code section 3300.

■ To recover for breach of an obligation arising from a contract, a third person not in privity with a party to the contract must be an intended third party beneficiary of the contract (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 589-591 [15 Cal.Rptr. 821, 364 P.2d 685]; *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 226 [449 P.2d 161]). ■ For example, where an abstract has been made and the abstractor knows that the abstract is expressly for the benefit of a third person, then the abstractor may be liable to that third person (*Hawkins* v. *Oakland Title Ins. & Guar. Co., supra,* 165 Cal.App.2d 116, 129). But one who is only an incidental beneficiary of the policy of title insurance issued to the buyers has no grounds for recovery on the contract against the title insurer. (*Lucas* v. *Hamm, supra,* 56 Cal.2d at p. 590; *Kenny* v. *Safeco Title Ins. Co.* (1980) 113 Cal.App.3d 557, 561 [169 Cal.Rptr. 808].)

In the instant case the buyers employed respondent title companies to search the record as abstractors of title and to insure good title to the property. Because the abstractor did not know of Stagen's interest in the property at the time the contract was performed, it follows that he could not have been an intended third party beneficiary of the contract. Stagen thus has no ground for recovery on the contract.

*Recovery in Tort*

■ In a proper case, there is a cause of action in tort against professional suppliers of information for the guidance of others. The measure of damage for breach of an obligation not arising from contract is as provided in Civil Code section 3333.

The Restatement of Torts section 552,[1] cited and approved by the *Hawkins* court, *supra,* 165 Cal.App.2d at pages 125-126, sets forth the rule of liability for professional suppliers of information for the guidance of others in their business transactions. "One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and (b) the harm is suffered (i) by the person or one of the class of persons for whose guidance the information was supplied, and (ii) because of his justifiable reliance upon it in a transaction in which it was

---

[1]References to section 552 hereinafter are to the Restatement of Torts.

intended to influence his conduct or in a transaction substantially identical therewith."

In *Kenny* v. *Safeco, supra,* 113 Cal.App.3d 557, a title company insured a buyer's title to be free of encumbrances. When the buyer discovered the existence of a federal tax lien on the property, the title company paid the lien and sued the sellers for breach of contract against encumbrances. The sellers filed a cross-complaint in tort alleging that the title company's negligence precluded them from effecting a settlement with the IRS for a sum considerably less than the full amount of the lien. The court held that the sellers' prior knowledge of the tax lien negated any reliance by the sellers on the insurance policy or any possible duty on the part of the title company to advise the sellers of the lien's existence. "They had this knowledge." Citing section 552 the court concluded that it could not "rationalize any theory as to how a pleader . . . could properly plead a cross-complaint for negligence in the absence . . . of a duty of care." (*Id.,* at pp. 559-561.)

In *Banville* v. *Schmidt* (1974) 37 Cal.App.3d 92 [112 Cal.Rptr. 126], plaintiffs had accepted an offer for their property, through the broker with whom they had listed it, of $2,000 cash and the assignment of a promissory note secured by a first deed of trust on other property. The broker had represented to plaintiffs that the security for the note was adequate and that the maker of the note was financially responsible. The deed from plaintiffs to the buyer and the assignment to the plaintiffs of the trust deed securing the promissory note (and the note) were recorded contemporaneously. At the same time a title company issued to plaintiffs a policy of title insurance insuring plaintiffs that title to the property which was subject to the trust deed securing the note was vested in the maker of the note.

In fact, the maker of the note had recorded a deed conveying the property back to the buyer of plaintiffs' property six days prior to issuance of the policy to plaintiffs. The encumbered property was actually inadequate as security for the note, and the maker of the note was in shaky financial condition (*id.,* at pp. 96-97).

Plaintiffs brought an action in tort for negligence, fraud, and misrepresentation against the broker, the buyer, and the title company. The trial court granted judgment against the broker and the buyer for compensatory and punitive damages, but granted judgment for the title company and against plaintiffs, who appealed from the judgment for the title company.

On appeal, the title company urged that it was only an insurer of title; that it owed no *duty* to the plaintiffs to search the title; that its liability, if any, could be founded only in contract, which was not pleaded; and that it

could not be held liable on the basis of negligence. (*Id.*, at p. 102.) The Court of Appeal reversed and directed that the trial court enter judgment for plaintiffs and against the title company, citing section 552 and pointing out that the title insurance policy was issued to insure the plaintiffs against the very loss which they suffered, and that it would be unconscionable to say that the title company did not owe a duty to the plaintiffs to reasonably and carefully perform their search and examination. (*Id.*, at pp. 104-105.)

The broker cross-complained against the title company for indemnity, alleging that its negligence in incorrectly reporting the status of the title to the property securing the trust deed was a superseding cause of any damage incurred by plaintiffs; and that if the broker should be held liable to plaintiffs, the title company should indemnify the broker. The trial court sustained without leave to amend the title company's demurrer to the broker's cross-complaint. The court of appeal affirmed, pointing out that there was no privity of contract between the broker and the title company, that the "end and aim" of the title insurance policy was not to protect the broker from the consequences of his own negligence, and that the conduct upon which the broker's liability to plaintiffs was predicated was not done in reliance upon any information furnished by the title company. Thus, there was no basis for holding the title company liable to the broker.

*De Zemplen* v. *Home Federal S. & L. Assn.* (1963) 221 Cal.App.2d 197 [34 Cal.Rptr. 334], is a pleading case in which the court of appeal reversed a judgment of dismissal following the sustaining, without leave to amend, of demurrers to a complaint for damages for negligent representation in connection with an exchange of property.

Plaintiffs alleged that a title company falsely represented to them that, in acquiring certain property in an exchange, they would be protected by an existing indemnity agreement in respect to the property. Those representations were false, plaintiffs relied upon them to their damage, and the title company intended that plaintiffs rely upon those representations. The court of appeal reversed the judgment, citing section 552, holding that it was not necessary to plead privity of contract to maintain an action for negligent misrepresentation and pointing out that the only limitations in section 552 are that the defendant must intend that the plaintiff rely on the information and that the plaintiff must rely on it to his detriment. (*Id.*, at pp. 205-206.)

In each case cited above title companies were found liable only to persons (1) for whose guidance information was supplied; (2) who justifiably relied on the information; and, most importantly, (3) who were intended to be influenced by the communication. Intent to influence is a threshold issue. In its absence there is no liability even though a plaintiff

has relied on the misrepresentation to his or her detriment, and even if such reliance were reasonably foreseeable.[2] (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 19 [147 Cal.Rptr. 655]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 480, p. 2740.)

■ In the instant case, although respondents are professional suppliers of information, they did not supply information for Stagen's guidance, but rather for that of the buyers. Thus, any failure to exercise care in obtaining and communicating the fact that a lis pendens affecting the subject property had been recorded by Stagen would have been actionable only by the buyers.

Moreover, the buyers were the only parties whose reliance on the information was intended and which was justified; they are the persons to whom it was supplied. Stagen did not receive the information supplied to the buyers by the title companies, and he did not rely upon it. Stagen alleges that when he recorded the lis pendens he anticipated that some future title company would disclose its existence to a potential buyer, and the buyer would refrain from purchasing the property. Such reliance is not justified. The buyer could decide to purchase the property regardless of the lis pendens, or the title company could decide that it would assume the risk of the plaintiff's pending suit. It is not reasonable to take a document intended to impart notice of a pending action affecting the property (*Lee* v. *Silva* (1925) 197 Cal. 364, 373 [240 p. 1015]; *Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 542 [115 Cal.Rptr. 257]; *Brandolino* v. *Lindsay* (1969) 269 Cal.App.2d 319, 325 [75 Cal.Rptr. 56]), and superimpose a secondary objective of preventing a transfer.

Stagen's analysis is also factually flawed. He has not been harmed by respondents' asserted negligence in omitting to report the existence of the lis pendens in the abstract prepared for buyers. ■ As previously noted, "[t]he purpose of a *lis pendens* is merely to furnish a means of notifying all persons of the pendency of an action and thereby to bind any person who may acquire an interest in property, subsequent to the institution of the action, by any judgment which may be secured in the action affecting the property." (*Lee* v. *Silva, supra,* 197 Cal. 364, 373; Code Civ. Proc., § 409.)

---

[2] In *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470], where a title report prepared for buyers of real property failed to include an existing easement in the property, the buyers proved a cause of action for negligent infliction of emotional distress (*id.,* at p. 940), but the court noted that they might also have stated an action for negligent misrepresentation (*id.,* at p. 940, fn. 13). Although the case sets forth the requirements of general negligence (*id.,* at p. 938), it is apparent that the title company intended to influence the buyers in the issuance of its abstract of title.

A judgment favorable to the plaintiff relates to, and receives its priority from, the date the lis pendens is recorded, and is senior and prior to any interests in the property acquired after that date (Civ. Code, § 1214; *Moore* v. *Schneider* (1925) 196 Cal. 380, 393 [238 P. 81]; *D-K Investment Corp.* v. *Sutter* (1971) 19 Cal.App.3d 537, 546 [96 Cal.Rptr. 830]; *Putnam Sand & Gravel Co.* v. *Albers* (1971) 14 Cal.App.3d 722, 725 [92 Cal.Rptr. 636]; *Swartfager* v. *Wells* (1942) 53 Cal.App.2d 522, 528-529 [128 P. 2d 128]). Thus, when Stagen recorded his lis pendens, he placed himself in a position where his rights could not be affected by the existence of subsequent purchasers, or the failure of the title company to report the existence of the action. If Stagen had recovered a judgment for specific performance, it would have been enforceable against the buyers, and they would have been compelled to convey the property to Stagen.

Stagen's argument that had the title companies not failed to disclose the lis pendens no sale would have been completed and the remedy of specific performance would have been practicable at trial, is also without merit. The trial court denied specific performance because the property was the community property of the seller and his wife, the wife did not execute the sales contract, and Stagen was aware of these circumstances. The court concluded that ordering specific performance would have required it to enforce a contract that neither party ever agreed to, and Stagen's legal remedy of damages was adequate. It is obvious that Stagen's failure to recover judgment for specific performance was not caused by the subsequent sale of the property.

Stagen also relies on a line of cases commencing with *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], to establish liability of professionals to third persons who are not in privity of contract. *Biakanja* involved a negligence action by the intended beneficiary of an improperly attested will prepared by a notary public. Framing the issue as "whether defendant was under a duty to exercise due care to protect plaintiff from injury and was liable for damage caused plaintiff by his negligence even though they were not in privity of contract." (*id.,* at p. 648), the *Biakanja* court set forth the criteria for liability under such circumstances. "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.,* at p. 650.)

In finding for the intended beneficiary, the court concluded that "the 'end and aim' of the transaction was to provide for the passing of [decedent's]

estate to plaintiff." (*Id.*, see also *Kenny* v. *Safeco Title Ins. Co.*, *supra*, 113 Cal.App.3d 557, 560-561 (policy of title insurance not intended to protect plaintiff sellers); *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 111 [128 Cal.Rptr. 901] (defendant attorneys' opinion concerning the status of a partnership was rendered for purpose of influencing nonclient plaintiff's conduct, and harm to him was clearly foreseeable); *Banville* v. *Schmidt, supra,* 37 Cal.App.3d 92, 100 (end and aim of escrow and title insurance not to protect the broker and the broker's conduct was not undertaken in reliance upon information furnished by title company); *De Zemplen* v. *Home Federal S. & L. Assn., supra,* 221 Cal.App.2d 197, 201, 206 (plaintiff buyers relied and acted on title company's misrepresentation made with intent they do so).)

Stagen has no ground for recovery under *Biakanja* and its progeny. The "end and aim" of the transaction here, the title search and issuance of title insurance, was not intended to affect Stagen but to protect the buyers.[3]

## DISPOSITION

The judgment on the pleadings for West Coast Title and the judgment on the pleadings for Title Guaranty are both affirmed.

Klein, P. J., and Lui, J., concurred.

---

[3]Stagen urges the court to adopt the standard set forth in *Williams* v. *Polgar* (1974) 391 Mich. 6 [215 N.W.2d 149] and *Kovaleski* v. *Tallahassee Title Co.* (Fla. App. 1980) 391 So.2d 315, holding that an abstractor's contractual duty runs to those persons an abstractor could reasonably foresee as relying on the accuracy of the abstract. We decline to do so, but in any event note that in each case the foreseeable plaintiff was a grantee who relied on an erroneous abstract prepared in the first instance for the private seller and in the second for a tax collector pursuant to a tax sale. Both defendants knew, or should have known, that the title search was not only for the benefit of the contracting party. The case at bar is distinguishable. The title search was not undertaken for Stagen's benefit, nor was he, as a party to a prior land sale contract with the seller, in the same class of foreseeable plaintiffs as a subsequent grantee.