Filed 6/30/15 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MIRA OVERSEAS CONSULTING LTD., | B254298 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC476282) |
| v. | |
| MUSE FAMILY ENTERPRISES, LTD. et al., | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendants and Appellants; | **[NO CHANGE IN JUDGMENT]** |
| CARMEN COPPLE SILVA, Individually and as Trustee, etc., | |
| Defendant and Respondent. | |

THE COURT:[*]

It is ordered that the opinion filed herein on June 2, 2015, be modified as follows:

On page 2, the first sentence of the last full paragraph, the words "(whom he later remarried)," are deleted so the sentence now reads:

> Meanwhile, during the divorce proceedings, David's former wife claimed that he hid assets from her, including the property.

There is no change in the judgment.

Plaintiff and respondent's petition for rehearing is denied.

---

[*]     BOREN, P. J.          ASHMANN-GERST, J.          CHAVEZ, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MIRA OVERSEAS CONSULTING LTD., | B254298 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC476282) |
| v. | |
| MUSE FAMILY ENTERPRISES, LTD. et al., | |
| Defendants and Appellants; | |
| CARMEN COPPLE SILVA, Individually and as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Richard L. Fruin, Jr., Judge. Reversed.

Locke Lord, Jon L. Rewinski; and Christopher Dove for Defendants and Appellants.

Law Offices of Saied Kashani and Saied Kashani for Defendant and Respondent.

Kendrick Jan; Chassman & Seelig and Mark B. Chassman for Plaintiff and Respondent.

_____

The question presented is: Does a judgment granting a fraudulent transfer claim, as well as monetary damages, relate back to the date on which the claimants recorded a lis pendens? We conclude that it does. Following a bench trial on reciprocal claims for declaratory relief regarding the priority of judgment liens, the trial court determined that the judgment lien of respondent Mira Overseas Consulting, Ltd. (Mira) had priority over appellants' Muse Family Enterprises, Ltd. (the Muse Parties) judgment lien because it was filed first. We reverse, finding that the Muse Parties' judgment lien relates back to the date they recorded a lis pendens.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Underlying Facts[1]

The Muse Parties are 20 investor entities that made loans to BTM Funding, Inc. (BTM), a company wholly owned by David T. Smith (David). In 2008, David used BTM to purchase a residence in Pacific Palisades, California (the property) for approximately $10 million. David had BTM take title to the property to hide it from his former wife during their contentious divorce proceedings. David married respondent Carmen Copple Silva (Carmen), who is also trustee of the Carmen Copple Silva Revocable Living Trust (trust). In November 2008, David caused to be executed a quitclaim deed which transferred the property from BTM to himself. On the same day, David signed a quitclaim deed transferring the property to Carmen. A year later, Carmen executed a quitclaim deed transferring the property from herself to her trust. None of these quitclaim deeds were recorded until 2009, after financial problems with BTM surfaced. Because David had listed the property as the primary asset of BTM, the effect of the quitclaim deeds was to render BTM insolvent.

Meanwhile, during the divorce proceedings, David's former wife (whom he later remarried) claimed that he hid assets from her, including the property. She and David eventually settled the issue by having Mira, a British Virgin Islands entity, originally beneficially owned by David transferred to her.

---

[1] These facts are taken from our earlier opinion. (*Muse Family Enterprises, Ltd. v. BTM Funding, Inc.* (Sept. 30, 2014, B247757) [nonpub. opn.].)

**The Los Angeles Action**

On September 14, 2010, the Muse Parties filed a complaint in the Los Angeles Superior Court against BTM, David, Carmen and her trust (the Los Angeles Action). The complaint alleged causes of action for breach of contract and fraud, and also sought to set aside the quitclaim deeds as fraudulent transfers.

On September 16, 2010, the Muse Parties recorded in the county recorder's office a "Notice of Pendency of Action" (the lis pendens), advising that the Los Angeles Action "affects title to or right to possess" the property.

David let BTM's default be taken. In July 2011, the remaining parties entered into a stipulation that BTM breached contracts with the Muse Parties, causing damages of approximately $16 million plus interest. A judgment following this stipulation was entered on October 22, 2012. The case then proceeded to trial in October and November 2012 on the issues of fraudulent transfer and alter ego. A jury found that David was the alter ego of BTM, that the transfer of the property from BTM to David was fraudulent, and that David caused $10 million in damages with respect to the fraudulent transfer. An amended judgment was entered on January 25, 2013, awarding damages of $21,280,561.27 to the Muse Parties against BTM and David as its alter ego. The amended judgment also nullified all of the quitclaim deeds as fraudulent transfers, which resulted in title to the property reverting back to BTM. The amended judgment was recorded with the county recorder on February 26, 2013. BTM, David, Carmen and her trust appealed the amended judgment, which we affirmed. (*Muse Family Enterprises, Ltd. v. BTM Funding, Inc.*, *supra*, B247757.)

**The Santa Monica Action**

On March 4, 2011, about six months after the Los Angeles Action commenced, respondent Mira, which was now owned by David's former wife, filed a first amended complaint (FAC) in the Los Angeles Superior Court in Santa Monica against BTM, David, Carmen and her trust (the Santa Monica Action). The FAC alleged breach of contract, seeking to recover a $4.66 million loan made to BTM for the purchase of the

3

property, which David had assumed.  The FAC also asserted a fraudulent transfer claim, challenging the same title transfers as the Muse Parties challenged.

A few months later, Mira and the defendants in the Santa Monica Action entered into a written agreement, and a stipulated judgment was entered on June 6, 2011.  The defendants stipulated to a money judgment against themselves for $5,428,900, and Mira stipulated that it would enforce the judgment only through levy on the property.  An abstract of Mira's judgment was recorded on July 15, 2011.

The defendants in the Santa Monica Action were the same defendants in the Los Angeles Action and were represented by the same counsel.  None of the defendants, however, filed a notice of related case in either action or otherwise notified the Muse Parties of the Santa Monica Action.  The Muse Parties first learned about the Santa Monica Action when they took David's deposition on August 29, 2011, at which time David's counsel provided copies of the settlement agreement, the stipulated judgment, and the recorded abstract of judgment from the Santa Monica Action.

**The Instant Action**

Mira initiated the instant action by filing a complaint against the Muse Parties, BTM, David, Carmen and her trust on January 3, 2012, seeking a declaration that its judgment lien was superior and senior to any lien that might be obtained by the Muse Parties with respect to the property.  The Muse Parties filed a cross-complaint, seeking a declaration that their anticipated judgment lien related back to the recording of their lis pendens and was therefore superior.  The Muse Parties also sought a declaration that Mira's judgment was collusive and therefore void.

The instant case was tried to the court in April 2013.  On November 20, 2013, the court issued a lengthy statement of decision, finding that the Muse Parties' judgment did not relate back to the lis pendens and that the Mira judgment was not void due to extrinsic fraud.  Judgment was entered on December 17, 2013.  The Muse Parties timely filed this appeal.

4

## DISCUSSION

### I. Lis Pendens

As our Supreme Court explained in *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642 (*Kirkeby*): "'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice.' [Citation.] A lis pendens may be filed by any party in an action who asserts a 'real property claim.' (Code Civ. Proc., § 405.20.) Section 405.4 defines a "'Real property claim'" as 'the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property . . . .' 'If the pleading filed by the claimant does not properly plead a real property claim, the lis pendens must be expunged upon motion under CCP 405.31.' [Citation.]" (*Kirkeby, supra*, at p. 647, fn. omitted.)

Because a lis pendens provides constructive notice of the litigation, "any judgment later obtained in the action relates back to the filing of the lis pendens." (*Slintak v. Buckeye Retirement Co., L.L.C., Ltd.* (2006) 139 Cal.App.4th 575, 586.) "A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged, and any party acquiring an interest in the property after the action is filed will be bound by the judgment." (*Id*. at pp. 586–587; *Stagen v. Stewart-West Coast Title Co.* (1983) 149 Cal.App.3d 114, 123 ["A judgment favorable to the plaintiff relates to, and receives its priority from, the date the lis pendens is recorded, and is senior and prior to any interests in the property acquired after that date"].) As set forth in Code of Civil Procedure, section 405.24: "From the time of recording the notice of pendency of action, a purchaser, encumbrancer, or other transferee of the real property described in the notice shall be deemed to have constructive notice of the pendency of the noticed action as it relates to the real property and only of its pendency against parties not fictitiously named. *The rights and interest of the claimant in the property, as ultimately determined in the pending noticed action, shall relate back to the date of the recording of the notice*." (Italics added.)

## II.  Fraudulent Conveyance

A fraudulent conveyance claim is set forth in the Uniform Fraudulent Transfer Act (UFTA) (Civil Code section 3439 et seq.).  As *Kirkeby* explained, "'[a] fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim.'"  (*Kirkeby*, *supra*, 33 Cal.4th at p. 648.)  Civil Code section 3439.07 sets forth the remedies in a fraudulent conveyance action, including "Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."  (Civ. Code, § 3439.07, subd. (a)(1).)

## III.  The *Kirkeby* Case

In *Kirkeby*, our Supreme Court was asked to decide whether a fraudulent conveyance claim affects title to or the right to possess real property thereby supporting the recording of a lis pendens.  (*Kirkeby*, *supra*, 33 Cal.4th at p. 645.)  The Supreme Court concluded that it does.  (*Ibid*.)

The plaintiff filed a complaint alleging 27 causes of action, including a fraudulent conveyance cause of action, and recorded a lis pendens.  (*Kirkeby*, *supra*, 33 Cal.4th at p. 646.)  The complaint requested that the alleged fraudulent transfers be voided to the extent necessary to satisfy the other claims set forth in the plaintiff's complaint.  (*Ibid*.)  That remedy was the plaintiff's only interest in the property.  The trial court granted a motion to expunge the lis pendens and the appellate court affirmed, finding that the basis of the complaint was to recover money and had nothing to do with real property.  (*Id*. at pp. 646–647.)

The Supreme Court reversed:  "[A] fraudulent conveyance claim requesting relief pursuant to Civil Code section 3439.07, subdivision (a)(1), if successful, may result in the voiding of a transfer of title of specific real property.  By definition, the voiding of a transfer of real property will affect title to or possession of real property.  Therefore, a fraudulent conveyance action seeking avoidance of a transfer under subdivision (a)(1) of Civil Code section 3439.07 clearly 'affects title to, or the right to possession of' (Code Civ. Proc., § 405.4) real property and is therefore a real property claim for the purposes of the lis pendens statutes."  (*Kirkeby*, *supra*, 33 Cal.4th at p. 649.)

**IV. The Muse Parties' Judgment Lien Relates Back to the Recording of the Lis Pendens**

In ruling on the parties' competing claims for priority of their judgment liens, the trial court in the instant action stated that *Kirkeby* was "silent as to whether a judgment obtained on a fraudulent transfer claim relates back to the filing of the lis pendens in instances where the judgment creditor did not allege a direct interest in the property." The trial court also stated that the Muse Parties only sought a money judgment and filed their fraudulent transfer claim merely to obtain return of the title in the property to BTM so that their eventual judgment could be levied against BTM's interest in the property. The trial court also noted that the Muse Parties did not seek any provisional remedies such as attachments, injunctions, or the appointment of receivers.

But the trial court's analysis ignores that the instant action involves the same type of property claim as *Kirkeby*. The plaintiff in *Kirkeby*, like the Muse Parties here, only filed a fraudulent transfer claim to void the transfers "to the extent necessary to satisfy the claims set forth in her complaint." (*Kirkeby*, *supra*, 33 Cal.4th at p. 646.) In *Kirkeby*, there were 26 other claims that did not involve the real property. Yet, because the UFTA specifically allows the remedy of "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" (Civ. Code, § 3439.07, subd. (a)(1)), the *Kirkeby* court held that a fraudulent conveyance claim seeking avoidance of a transfer "is therefore a real property claim for the purposes of the lis pendens statutes." (*Kirkeby*, *supra*, at p. 649.) The necessary corollary to this rule is that a successful claimant's rights and interests in the property relate back to the recording of the claimant's lis pendens.

Additionally, there is no requirement that a party filing a fraudulent transfer claim pursue other remedies under the UFTA. "The UFTA expressly provides for remedies such as attachments, injunctions, and the appointment of receivers." (*Kirkeby*, *supra,* 33 Cal.4th at pp. 651–652.) "'[A]lthough [the UFTA] does not provide for notices of lis pendens, it does not exclude them either.'" (*Kirkeby,* at p. 652.) The *Kirkeby* court described the language in Civil Code section 3439.07, subdivision (a)(3)(C) that a

creditor bringing a UFTA claim is entitled to "[a]ny other relief the circumstances may require" as "broad," supporting the recording of a lis pendens. (*Kirkeby,* at p. 652.) Thus, the *Kirkeby* court saw nothing wrong with the plaintiff's election of the lis pendens remedy instead of the attachment or other express remedies of the UFTA.

In sum, we conclude that because the Muse Parties indisputably had the right to record a lis pendens with respect to their fraudulent transfer claim, their rights and interest in the property (i.e., the avoidance of transfers of the property to satisfy their claims) relate back to the date they recorded their lis pendens. Because this date was earlier than the date Mira recorded its abstract of judgment, the Muse Parties' judgment lien has priority.

In reaching this conclusion, we acknowledge the argument of respondent Carmen, as individual and trustee, that the Muse Parties have no lien on the property because they never recorded an abstract of judgment. Carmen correctly notes that, except in certain situations not applicable here, a judgment lien on real property is created by recording an *abstract* of judgment, rather than recording the judgment itself. (Code Civ. Proc., § 697.310. subd. (a).) Carmen points out that the Muse Parties never produced a recorded abstract of judgment during the trial court litigation in the instant case. However, it is clear from the record, as Carmen concedes, that the trial court and the parties treated the Muse Parties' recorded amended judgment as an abstract. In any event, the Muse Parties recorded an abstract of judgment on November 5, 2012, which abstract was originally issued on October 31, 2012. This is the original judgment against BTM following the stipulation. The Muse Parties then recorded an abstract of the amended judgment on February 7, 2014, which abstract was issued on February 6, 2014, relating to the issues later decided at trial. The Muse Parties have asked us to augment the record to include their first recorded abstract of judgment, which is part of the record in the instant case as an exhibit to the Muse Parties' objections to the statement of decision. They have also asked us to take judicial notice of their second recorded abstract of the amended judgment. We grant these requests. Carmen did not raise this issue

8

below. Had she done so, the Muse Parties could have easily pointed to the recorded abstract of judgment.[2]

## DISPOSITION

The judgment is reversed. The Muse Parties are entitled to recover their costs on appeal.

## <u>CERTIFIED FOR PUBLICATION.</u>

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ

---

[2] In light of our conclusion, we need not address the Muse Parties' argument that the Mira judgment should have been set aside as the product of extrinsic fraud.