Filed 7/20/22  Ticor Title Co. of Cal. v. Minkovitch CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| TICOR TITLE COMPANY OF CALIFORNIA et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> YAN MINKOVITCH, <br><br>     Defendant and Appellant. | B312634 <br><br> (Los Angeles County Super. Ct. No. BC701437) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Yan Minkovitch, in pro. per., for Defendant and Appellant.

Fidelity National Law Group and Kevin R. Broersma for Plaintiffs and Respondents.

We consider whether a title insurer or an escrow agent owes a duty of care to the spouse of a purchaser of real property where the spouse and the purchaser expressly agreed the purchaser would procure the property in the purchaser's name alone, and the spouse was not a party to the purchase or the related escrow instructions.

## I. BACKGROUND[1]

### A. *The Underlying Purchase*

In 2013, cross-complainant and appellant Yan Minkovitch (Yan) engaged the services of cross-defendants and respondents Ticor Title Company of California (Ticor) and Lawyers Title Company (Lawyers Title) to provide him and his then-wife, Lina Minkovitch (Lina), with title insurance and escrow services in connection with their purchase of real property located at 4949 Palo Drive, Tarzana, California 91356 (the property). The parties discovered Yan had a credit history that jeopardized the couple's ability to jointly obtain financing. Lina, however, could qualify for the loan on her own. Yan and Lina accordingly decided she would purchase the property in her name alone.

Before the purchase transaction closed, Ticor and Lawyers Title demanded Yan execute a real property quitclaim deed in favor of Lina. The final escrow instructions, however, did not specifically demand the execution of the quitclaim deed. They did provide, though, that Lawyers Title was "authorized to prepare,

---

[1]    Our factual recitation is taken from the operative cross-complaint's allegations and attached exhibits. (See generally *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1 (*Yvanova*).)

obtain, record, and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at the close of escrow as called for in these instructions."

Yan told Ticor and Lawyers Title that he held a community property interest in the property and the property was being taken in Lina's name alone solely to facilitate the transaction. But Ticor and Lawyers Title continued to demand Yan execute a quitclaim deed, and he felt compelled to sign what they required to ensure the purchase could be completed. The deed Ticor and Lawyers Title ultimately presented to Yan was an interspousal transfer grant deed (not a quitclaim deed). Ticor and Lawyers Title neither explained the form to Yan nor gave him time to seek counsel. Yan signed the deed presented.

### B. The Property Is Sold While Yan and Lina Are in Divorce Proceedings; a Lawsuit Ensues

In April 2016, Lina, as seller, opened escrow with Ticor in order to sell the property. At the time of escrow, Lina and Yan were in the midst of divorce proceedings.[2] Ticor received competing claims for the property sale proceeds that remained after the close of escrow, and Ticor filed a complaint in interpleader naming Yan, Lina, and the United States (i.e., the Internal Revenue Service) as parties with an interest in the funds.

---

[2] We affirmed the trial court's judgment of dissolution in *In re Lina & Yan Minkovitch* (Oct. 16, 2020, Nos. B297022, B300374, B301994) [nonpub. opn.].

3

In August 2019, Yan filed a cross-complaint against Ticor in the interpleader action. Ticor demurred. The trial court sustained the demurrer and granted leave to amend. In March 2020, Yan filed a first amended cross-complaint (the operative complaint) alleging causes of action against both Ticor and Lawyers Title.

The operative cross-complaint asserts causes of action for negligence, breach of fiduciary duty, and interference with prospective economic advantage. Generally, the operative cross-complaint alleges: Yan lost the ability to make a community property claim on the property sale proceeds in the divorce proceeding because Ticor and Lawyers Title required him to sign the interspousal transfer deed; Ticor wanted the deed to be signed in the interest of its own risk management, perhaps in protection of the lender, and without consideration of his community property interest; and Lawyers Title acted only in Ticor's interest and without regard for the escrow instructions, which did not call for recording any deed other than the seller's grant deed.

Turning to the specific causes of action, the negligence claim alleges Yan was a customer of Ticor and Lawyers Title and paid for their services. It further alleges cross-defendants "and particularly, Lawyers [Title], Escrow Division, had a legally cognizable duty to [Yan] to administer the escrow according to the Escrow Instructions, no more and no less." As alleged, Ticor and Lawyers Title acted in excess of the final escrow instructions by demanding Yan execute the interspousal transfer grant deed and breached their duty to him to operate under and within the confines of the escrow instructions. The breach of fiduciary duty cause of action alleges Lawyers Title agreed to act as the escrow

4

holder for the purchase of the property, thereby assumed fiduciary responsibilities as to Yan because it knew he held potential and actual community property interests in the property, and breached its fiduciary duty by forcing Yan to sign the interspousal transfer deed. The interference with prospective economic advantage cause of action alleges Ticor and Lawyers Title forced him to sign away his community property interest in the home in order to decrease their own risk.

The operative cross-complaint attached two exhibits. Exhibit A, the form Residential Purchase Agreement and Joint Escrow Instructions, listed "Lina Mikovitch" as the buyer of the property. "Yan Minkovitch" was mentioned only as an "agent." Exhibit B, the Supplemental Escrow Instructions, similarly stated that title was to be vested in Lina only.

### C. The Demurrers

Lawyers Title demurred to the operative cross-complaint. The company argued the negligence claim failed to state a cause of action because an escrow company does not owe any duty to a third party to the transaction because there is no contract between them. Lawyers Title argued the cause of action for breach of fiduciary duty failed for a similar reason, i.e., Lawyers Title owned no such duty to Yan. As for the cause of action for interference with prospective economic advantage, Lawyers Title's demurrer argued it did not state a claim because Yan did not allege an independently wrongful act.

Ticor, too, demurred to the operative cross-complaint. It argued the cause of action for negligence failed to state a claim because Lina purchased the property alone, Yan was not an insured under the title policy, and Ticor owes a duty only to

5

insureds under the title policy.  Ticor's arguments as to the breach of fiduciary duty and interference with prospective economic advantage were the same as Lawyers Title's: no fiduciary duty was owed and Yan alleged no independently wrongful act.

Yan's opposition to the demurrers contended that any duty Ticor and Lawyers Title owed to Lina was similarly owed to him because he had a community property interest in the property, the community funds being used in the transaction, and the escrow contract Lina executed during the marriage.  Though his specific arguments were nominally directed to both cross-defendants, the substance of his arguments referenced only the duties owed by escrow holders and did not specifically address title insurers.[3]

Ticor filed a reply arguing in pertinent part that Yan did not address Ticor's specific role as a title company.  Ticor reiterated its argument that Lina, not Yan, was the purchaser

---

[3]     Yan also asked the trial court to judicially notice a reporter's transcript of proceedings that took place in his marriage dissolution case (case number BD630832) and the final supplemental escrow instructions for Lawyers Title Escrow Number WHL17573 ST.  The transcript reflects the family court received the interspousal transfer grant deed into evidence and stated the document included the following language:  "Grantors, Yan Minkovitch, spouse of grantee, hereby grants to Lina Minkovitch, a married woman as her sole and separate property."  The family court then said, "if there was anything respondent even owned, he's transferred it by this document to petitioner.  So it is her sole and separate property."  The final supplemental escrow instructions provided title would be vested in "Lina Minkovitch."

6

and the named insured on the policy, which precluded negligence liability. Lawyers Title's reply argued in pertinent part that an escrow holder is a limited fiduciary to the parties to the escrow only, Yan was not a party to the transaction, and Yan had not alleged and could not allege Lawyers Title failed to follow any escrow instructions.

### D. The Trial Court's Ruling

The trial court sustained both demurrers (and granted Yan's request for judicial notice).

In addressing the negligence cause of action, the trial court recognized the duties Ticor and Lawyers Title were alleged to owe to Yan arose from their respective roles as title insurance company and escrow agent. The court then analyzed whether Ticor or Lawyers Title had a legally cognizable duty to Yan. It noted Yan was not listed as a party or beneficiary on either the real estate purchase forms or the escrow instructions. Yan was thus neither the buyer nor an intended third-party beneficiary. He was, at most, an incidental beneficiary and therefore neither Ticor nor Lawyers Title had a duty to him.

The trial court then turned to whether a duty could exist by virtue of the relationship of the parties. The court analyzed the question by applying the factors identified by our Supreme Court in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*).[4] With

---

[4] The *Biakanja* factors "are used to determine whether persons must exercise reasonable care to avoid negligently causing economic loss to others with whom they were *not* in privity (sometimes referred to as third parties)." (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 937-938.) The factors are "'[1] the extent to which the transaction was intended to

7

respect to Ticor, the court found Yan was not an intended third-party beneficiary of any contract with Ticor (and Yan did not argue otherwise). As at most an incidental beneficiary, Ticor owed no duty to Yan. With respect to Lawyers Title, the court applied the *Biakanja* factors and concluded they militated against finding a duty. As a result, the court found as a matter of law that neither Ticor nor Lawyers Title owed a duty to Yan, and his negligence cause of action therefore failed as a matter of law.

Regarding the other two causes of action, the trial court found the breach of fiduciary duty cause of action failed to state a claim because neither Ticor nor Lawyers Title owed a fiduciary duty to Yan and the cause of action for interference with prospective economic advantage failed because the operative cross-complaint did not allege any independently wrongful act on the part of Ticor or Lawyers Title. Having sustained the demurrers, the court denied leave to amend as to all three causes of action, reasoning neither the opposition nor the arguments at the hearing demonstrated any possibility of a successful amendment.

---

affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1013-1014 (*Centinela*).)

## II. DISCUSSION

Yan's appeal of the trial court's ruling challenges only the court's analysis of the *Biakanja* factors to conclude cross-defendants owed him no duty. The trial court reached that conclusion only in connection with the negligence claim. We therefore confine our analysis to that claim and that issue, and we hold the trial court correctly concluded Ticor and Lawyers Title did not owe Yan a duty of care.[5] The transactions between Lina, Ticor, and Lawyers Title were aimed at facilitating Lina's purchase of the property. They were not meant to affect Yan. Though his injury might have been foreseeable to some degree, it was the result of Yan and Lina's independent decision that Lina would purchase the property in her name only so the transaction could go forward. Ticor's business decision to require Yan to sign the grant deed in order for it to issue title insurance was well within its rights, and Lawyers Title was merely executing the escrow instructions by helping Ticor obtain the signed deed. There is no moral blame attributable to cross-defendants' actions and there is no need to impose a duty to prevent future harm.

### A.    *Standard of Review*

We review an order sustaining a demurrer without leave to amend de novo. (*Centinela, supra,* 1 Cal.5th at 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or

---

[5]    In so narrowing the question on appeal, Yan agrees he was a third party to the transactions between Lina and each of the cross-defendants.

9

conclusions of fact or law.  We may also consider matters subject to judicial notice.  [Citation.]"  (*Yvanova*, *supra*, 62 Cal.4th at 924, fn. omitted.)  "'[T]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.'"  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490-1491.)

> **B.**      *Yan's Negligence Cause of Action Fails to State a Claim*

"[T]he threshold question in an action for negligence is whether the defendant owed the plaintiff a duty to use care." (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 715 (*Summit*).)  A defendant generally does not owe a duty to prevent purely economic loss to third parties under negligence law.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 58 (*Quelimane*).)  Rather, "[r]ecognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule . . . ."  (*Ibid.*)

"Title insurance is a contract by which the title insurer agrees to indemnify its insured against losses caused by defects in or encumbrances on the title not excepted from coverage." (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 675 (*Vournas*).)  "Put another way, the function of title insurance is to protect against the possibility that liens and other items not found in the search or disclosed in the preliminary report exist." (*Siegel v. Fidelity Nat. Title Ins. Co.* (1996) 46 Cal.App.4th 1181,

10

1191 (*Siegel*).) "An insured's claim against his title insurer is under the policy, and an insured has no separate claim against a title insurer based on negligence or negligent misrepresentation." (*Vournas, supra*, at 675-676.) "A party who does not purchase title insurance may not rely on the title insurer to protect his or her interests or to disclose all detrimental information contained in the recorded files." (*Siegel, supra*, at 1193.) Title insurers "may opt to limit their potential liability by declining certain risks without violating any statutory or common law obligation." (*Quelimane, supra*, 19 Cal.4th at 59.)

"An escrow may be defined as any transaction in which one person, for the purpose of effecting a sale, transfer or encumbrance of real or personal property to another person, delivers any written instrument, money, evidence of title or other thing of value to a third party, the escrow holder or depository, to be held by him for ultimate transmittal to the other person upon the happening of an event or the performance of certain specified conditions." (*Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 526.) "An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.] The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. [Citations.]" (*Summit, supra*, 27 Cal.4th at 711.) An escrow holder "'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.]" (*Ibid.*)

In assessing whether a title insurer (here Ticor) or an escrow holder (here Lawyers Title) owed a duty of care to a third party, we consider the aforementioned *Biakanja* factors. (See,

11

e.g., *Summit, supra,* 27 Cal.4th at 715-716; *Quelimane, supra,* 19 Cal.4th at 58-59; *Alereza v. Chicago Title Co.* (2016) 6 Cal.App.5th 551, 557-562 (*Alereza*); *Stagen v. Stewart-West Coast Title Co.* (1983) 149 Cal.App.3d 114, 123-124 (*Stagen*).) To review, the factors are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, any moral blame attached to the defendant's conduct, and the policy of preventing future harm. We believe, as the trial court did, that these factors do not support finding either cross-defendant owed a duty of care to Yan.

### 1. The extent to which the transaction was intended to affect Yan

We look first to the extent to which the transactions were intended to affect Yan. Or, as *Biakanja* also described it, we examine the "'end and aim'" of the transaction. (*Biakanja, supra,* 49 Cal.2d at 650.) The matter is rather straightforward in our view: the end and aim of the transaction between Lina and Ticor was to protect the buyer, Lina, and the end and aim of the escrow instructions was the completion of the sale of the property from the seller to the buyer, Lina. (*Alereza, supra,* 6 Cal.App.5th at 560; *Stagen, supra,* 149 Cal.App.3d at 124.) Yan, quite consciously, was not an intended beneficiary of either.

Yan disputes this, contending the sale of a home to a married couple necessarily means the spouse of the purchasing customer will be affected by the transaction and the end and aim of the transaction is to benefit the marital community. But that

12

was not the sale agreed upon here—by Lina and Yan's own design. The property was not sold to a married couple but to Lina alone, and this is demonstrated both by the allegations in the operative cross-complaint (alleging Yan's credit profile jeopardized the couple's ability to obtain financing) and the terms of the purchase agreement and escrow instructions (specifying Lina was the sole buyer). Lina and Yan structured the purchase to purposely exclude Yan.

### 2. *Harm, foreseeability, and closeness of connection between conduct and injury*

The next *Biakanja* factors concern injury and foreseeability. Yan's allegation that he was harmed by the loss of his community property interest in the home is sufficient to establish harm at the demurrer stage. And his injury was, in a certain sense, foreseeable: he signed an interspousal transfer deed granting the property to Lina, and the function of the deed was to transfer any interest Yan might have arguably had in the property to Lina. That the injury may have been foreseeable (at least insofar as Yan could acquire an interest in the property while married and a divorce between Lina and Yan could be foreseen) does not by itself mean Lawyers Title or Ticor had a duty to avoid the harm. (*Quelimane, supra*, 19 Cal.4th at 58 ["Foreseeability of financial injury to third persons alone is not a basis for imposition of liability for negligent conduct"].)

The more probative factor, in our view, is the relation between Ticor and Lawyers Title's conduct and the injury suffered. Ticor required Yan to sign the interspousal transfer deed in order to issue a title insurance policy as a result of Yan and Lina's decision that Lina would purchase the property in her

13

name alone. As Yan alleged, it did so in the interest of its own risk management, and perhaps to protect the lender. Ticor was well within its rights to impose such a requirement. Title insurers "may opt to limit their potential liability by declining certain risks without violating any statutory or common law obligation." (*Quelimane*, *supra*, 19 Cal.4th at 59.) Further, "insurer[s] do[ ] not have a duty to do business with or issue a policy of insurance to any applicant for insurance." (*Id.* at 43.)

Similarly, by assisting Ticor in obtaining the signed deed, Lawyers Title was following the instruction that directed it to ensure a title insurance policy was issued, as it was bound to do. (*E.g.*, *Summit*, *supra*, 27 Cal.4th at 711 [escrow holder is obliged to carry out instructions of parties to escrow].) Yan was thus presented with a choice—he could agree to sign the deed and the title insurance policy would issue, or he could refuse, and it would not. His knowing and voluntary decision to accept those terms is what caused the transfer of whatever right he had to the property.

Yan resists this conclusion and believes the cross-defendants' conduct was the cause of his injury because, in his view, there were alternative courses of action Ticor and Lawyers Title could have pursued—e.g., to let title vest in Lina without requiring him to sign the interspousal transfer grant deed (perhaps by having him sign a quitclaim deed that would not have transmuted the property)[6] or to exclude community property

---

[6] Contrary to Yan's assertion, the execution of a quitclaim deed would not necessarily have allowed him to retain a community property interest in the property. A quitclaim deed may constitute "sufficient evidence that a transmutation of his

14

claims from coverage under the title insurance policy. That Ticor and Lawyers Title could, in theory, have made alternative business decisions does not mean they had any duty to do so. (*Quelimane*, *supra*, 19 Cal.4th at 58 [declining to "recognize a duty to avoid business decisions that may affect the financial interests of third parties"].) Ticor had the right to place conditions on its issuance of the title insurance policy. It was under no obligation to tailor its decisions to attempt to ensure Yan could permit Lina to obtain financing contingent upon his absence from the purchase transaction while still somehow retaining a community property interest in the property.

### 3. *Moral blameworthiness and prevention of future harm*

Finally, we look to the moral blameworthiness of the conduct and the policy of preventing future harm. Yan contends the steps Ticor chose to reduce its liability for facilitating the purchase and sale transaction, and Lawyers Title's execution of the transaction as directed, are morally blameworthy because Ticor could have limited its liability in some other manner. As we have already explained, that Ticor might have attempted to reduce its liability in some other fashion does not render the steps it took morally blameworthy. (*Quelimane*, *supra*, 19 Cal.4th at 59.) Lawyers Title also committed no morally blameworthy act by complying with the escrow instructions. (*Summit*, *supra*, 27 Cal.4th at 716 [escrow agency complying with fiduciary duty to follow escrow instructions is not blameworthy].)

---

community interest in the property resulted." (*In re Marriage of Stoner* (1983) 147 Cal.App.3d 858, 864.)

The policy of preventing future harm also does not require the imposition of a new legal duty on either Lawyers Title or Ticor.  To the extent the financial arrangement Yan and Lina arrived at in this case arises especially frequently, spouses who agree not to be listed as a buyer on a real estate transaction under conditions similar to these have a built-in and obvious incentive to understand the consequences of their decisions.  (See *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 403 ["As a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools"].)  Imposing upon title insurers and escrow agents a duty to both discover and guard any community property interest had by spouses of purchasers who have been knowingly and intentionally excluded from purchase documents would impose a duty to affirmatively assist purchasers to obtain title in a manner that differs from that represented in their purchase documents (or to their lenders).  That would not serve the public interest.

16

DISPOSITION

The judgment is affirmed.  Ticor and Lawyers Title are awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



KIM, J.

17